Woody SHEPHERD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 43A05–9609–CR–395.

Court of Appeals of Indiana.

Dec. 29, 1997.

Transfer Denied March 4, 1998.

Christopher D. Kehler, Warsaw, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Phillip D. Hatfield, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

SHARPNACK, Chief Judge.

Woody Shepherd appeals his convictions for operating a vehicle while intoxicated resulting in death, a class C felony, and operating a vehicle with a blood alcohol concentration ("BAC") of 0.10% resulting in death, a class C felony. Shepherd raises nine issues for our review, which we consolidate and restate as:

1) whether the search performed on Shepherd's car at the wreck yard constituted an illegal search;

2) whether the trial court erroneously admitted a videotape of the accident scene;

3) whether the trial court erroneously allowed the State to recall one of its witnesses on two occasions after the witness's initial testimony;

4) whether the trial court erroneously admitted a diagram of the accident scene;

5) whether the trial court erroneously admitted the accident report prepared by the accident investigator;

6) whether the proper statutory procedures were followed in obtaining Shepherd's BAC results from the hospital;

7) whether the protocol used for collecting Shepherd's blood after the accident was prepared by a physician as required by statute; and

8) whether the computer printout containing the results of the BAC analysis was hearsay

We reverse.

The facts most favorable to the convictions follow. On the evening of February 23, 1995, Shepherd and three of his friends, Kevin Clark, Thomas Hamilton, and Keith Reffitt, met at Clark's house and drove to a bar in Fort Wayne, Indiana where they drank together. Around one o'clock in the morning on February 24, 1995, the group left the bar. Believing himself to be the most alert, Kevin Clark drove the group from the bar back to his home. From Clark's house, Shepherd left in his car with Reffitt. While driving, Shepherd hit a guard rail causing the car to flip over, killing Reffitt. After the accident, Shepherd left the car to seek assistance. Shepherd's blood alcohol level was .15% when it was measured at the hospital at 3:50 a.m.

On March 30, 1995, the State charged Shepherd with the aforementioned offenses. After a trial on April 22, 23, and 24, 1996, a jury found Shepherd guilty as charged on both counts. The trial court later sentenced him to four years, with two years suspended. Shepherd now appeals his convictions.

I.

The first issue that we must address is whether the search performed on Shepherd's car at the wreck yard a few hours after the accident constituted an illegal warrantless search. Around 7:40 a.m. on Friday, February 24, 1995, Officer Dan Vermillion of the State Police received a call from the Warsaw Police department requesting him to go to the wreck yard where Shepherd's car had been towed and collect physical evidence for the purpose of determining who had been driving the vehicle. Vermillion arrived at the wreck yard around 11:50 a.m. and collected samples of blood, tissue, and hair which he later transported to the Indiana State Police Laboratory for analysis. The police did not obtain a search warrant for the search of Shepherd's car. Shepherd argues that the State was required to obtain a warrant prior to the search. Therefore, he argues that the tissue and hair evidence generated by this search were erroneously admitted. We agree.

■ The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, protects persons from unreasonable government intrusions into areas of an individual's life in which he has a reasonable expectation of privacy. *Norwood v. State*, 670 N.E.2d 32, 35 (Ind.Ct.App.1996). The exceptions to the Fourth Amendment's requirement of a search warrant include risk of bodily harm or death, aiding a person in need of assistance, protecting private property, or actual or imminent destruction or removal of evidence before a search warrant may be obtained. *Harless v. State*, 577 N.E.2d 245, 248 (Ind.Ct. App.1991). The burden is upon the State to

show that a warrantless search was conducted within the confines of one of the exceptions to the warrant requirement. *Rabadi v. State*, 541 N.E.2d 271, 274 (Ind.1989).

■■■ The State argues that the warrantless search of Shepherd's car was justified under the automobile exception to the warrant requirement because the police had probable cause to search Shepherd's car. The State cites the United States Supreme Court's decision in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1969), *reh'g denied*, for support of its position. However, the State clearly misinterprets the holding of *Chambers*. The automobile exception to the search warrant rule requires more than probable cause. "Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search." *Id.* at 51, 90 S.Ct. at 1981. The Court in *Chambers* noted that both probable cause and a "fleeting target" is required to justify a search. *Id.* Where it is practicable to obtain a search warrant, it is unreasonable to conduct a warrantless search of an automobile. *Green v. State*, 647 N.E.2d 694, 696 (Ind.Ct. App.1995).

In the present case, the State does not offer evidence, nor does it assert, that there were exigent circumstances which prevented the police from obtaining a warrant before searching the car and collecting the samples. At Shepherd's request, the trial court, took judicial notice that the courts were open and judges were available on the day that Officer Vermillion went to the wreck yard to collect the samples. Further, the condition of the car after the accident was such that there was very little danger of the car being moved after it had been impounded at the wreck yard. As such, we conclude that the State has failed to demonstrate that the warrantless search of Shepherd's car fell within one of the exceptions to the warrant requirement. *See Rabadi*, 541 N.E.2d at 274. Because the evidence collected from Shepherd's car was illegally obtained, it was erroneous for the trial court to admit it at trial. *See Mapp v.*

*Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961), *reh'g denied* (holding that evidence obtained through an illegal search is not directly admissible in a criminal proceeding against a person whose privacy was violated by the search).

■■■ However, the erroneous admission of evidence is not reversible unless it constitutes prejudice against the defendant. *Davis v. State*, 520 N.E.2d 1271, 1274 (Ind.1988), *reh'g denied.* In the case before us, we cannot conclude that the admission of the evidence collected from Shepherd's car was harmless. The contested issue at trial was whether Shepherd was the driver of the vehicle. Some of the blood samples collected in close proximity to the driver's seat were confirmed to be Shepherd's blood. Officer Kip Shuter, the fatal accident investigator, testified that he did not conclude that Shepherd was the driver until after he received the results of the sample analysis. Because we conclude that the erroneous admission of this evidence was not harmless, we must reverse Shepherd's convictions.

## II.

■■■ Because the remaining issues raised by Shepherd are likely to recur upon a retrial, we will address each of them in turn.[1] The first of these issues is whether the trial court erroneously admitted a videotape of the accident scene. Shepherd argues that the videotape should not have been admitted because the State did not lay a proper foundation for its admission. First, he asserts that to properly admit the videotape, the State was required to show that the tape had not been altered in any way or that portions of the tape had not been deleted. He relies on the *Bergner* case for support of his contentions. *Bergner v. State*, 397 N.E.2d 1012 (Ind.Ct.App.1979). In *Bergner*, we set out the foundational requirements for the admission of photographs offered as substantive evidence rather than demonstrative evidence under the "silent witness" theory. We held that when offered for such a purpose there must be a strong showing of authenticity and

---

1. Shepherd also argues that the proper chain of custody was not laid for the admission of the tissue and hair samples collected from his car. However, because we have concluded that the evidence is inadmissable, it is not necessary for us to address his chain of custody argument.

competency including proof that the photograph has not been altered in any way. *Id.* at 1017. This higher standard is applied in situations where there is no one who can testify as to its accuracy and authenticity because the photograph must "speak for itself" and because such "silent witnesses" cannot be cross-examined. *Id.* at 1015.

◼ Shepherd maintains that the videotape was being used as a silent witness and thus, the higher standard for admission applies. We disagree. The videotape involved in this case was not offered as substantive evidence, but as demonstrative evidence. Photographs introduced in conjunction with testimony, are admitted, not as direct evidence of the scene depicted, but to assist the jury in visualizing the testimony of a witness. *State Through Highway Dept. v. Snyder,* 594 N.E.2d 783, 787 (Ind.1992). Demonstrative evidence is evidence offered for the purpose of illustration and clarification. *Underly v. Advance Mach. Co.,* 605 N.E.2d 1186, 1195 (Ind.Ct.App.1993), *reh'g denied, trans. denied.*

The videotape was shown to the jury in an effort illustrate the testimony of Shuter. Based on what the videotape illustrated for the jury, Shuter testified about his personal observations of the accident scene and explained his theory of how the accident occurred. Thus, this tape was not offered as substantive evidence but as demonstrative evidence to aid the jury in depicting the accident scene as described by Shuter. As such, the standards set out in *Bergner* do not apply to this case and we must apply the standards for the admission of demonstrative evidence.

◼ Admission of photographs and videotapes into evidence is left to the sound discretion of the trial court, and we will not reverse that decision except for an abuse of that discretion. *Isaacs v. State,* 659 N.E.2d 1036, 1043 (Ind.1995), *reh'g denied, cert. denied* —— U.S. ——, 117 S.Ct. 205, 136 L.Ed.2d 140. Generally, photographs offered as demonstrative evidence are admissible when it can be shown that they are a true and accurate representation of the scene which they purport to represent. *Stuckman v. Kosciusko County Bd. of Zoning Appeals,*

506 N.E.2d 1079, 1082 (Ind.1987). To be admissible, demonstrative evidence need only be sufficiently explanatory or illustrative of relevant testimony in the case to be of potential help to the trier of fact. *Id.*

◼ The videotape was made while Shuter was present at the scene. Shuter testified that the videotape was an accurate depiction of the scene as it existed while it was being taped. Therefore, we conclude that the trial court did not abuse its discretion in admitting the videotape as demonstrative evidence. *See Isaacs,* 659 N.E.2d at 1043.

◼ Shepherd also argues that the videotape should not have been admitted because the State failed to show the continuous whereabouts of the tape from the time it was made until the time it was offered at trial. Although the requirement to show a chain of custody is quite strict concerning fungible goods that are difficult to identify, the rule is less stringent on items that are readily identifiable at any given time. *English v. State,* 575 N.E.2d 14, 15 (Ind.1991). In addition, an argument based on lack of chain of custody which does no more than raise the possibility of tampering is without merit. *Pasco v. State,* 563 N.E.2d 587, 594–595 (Ind.1990). "The State need not establish a perfect chain of custody, and any gaps go to the weight of the evidence and not its admissibility. In addition, there is a presumption of regularity in the handling of exhibits by public officers, and a presumption that public officers discharge their duties with due care." *Kennedy v. State,* 578 N.E.2d 633, 639 (Ind.1991), *cert. denied* 503 U.S. 921, 112 S.Ct. 1299, 117 L.Ed.2d 521.

◼ Here, the videotape was not a fungible item and was readily identified by Shuter as the videotape made at the accident scene. Shuter testified as to its accuracy and authenticity. Shepherd does not suggest nor do we find any evidence in the record to indicate tampering or alterations. Even if an adequate chain of custody were not established for the videotape, Shepherd does not offer any explanation as to why the admission of the tape would have been prejudicial to him. The State admitted into evidence,

with no objection from Shepherd, the black and white photos of the accident scene which corroborated the images depicted in the videotape. Shuter's testimony describing the accident scene also supported what the jury observed in the videotape. Even if the tape were erroneously admitted, the videotape would at best be cumulative evidence and, as such, would not be prejudicial to Shepherd. *See Hendricks v. State,* 562 N.E.2d 725, 726 (Ind.1990) (holding that the erroneous admission of evidence is not grounds for reversal when the erroneous evidence is merely cumulative of other admitted evidence). Therefore, we conclude that the admission of the videotape was within the discretion of the trial court.

### III.

The next issue Shepherd raises is whether the trial court erroneously allowed the State to recall one of its witnesses on two occasions after the witness's initial testimony in an effort to more effectively present the State's case to the jury. Shepherd contends that although it is within the trial court's discretion to allow a party to recall a witness where a mistake or omission has been made, a trial court does not have the discretion to permit a party to intentionally plan a recall for strategic reasons. Despite Shepherd's opportunity to thoroughly cross-examine Shuter each time he was recalled to the stand, Shepherd also maintains that such a practice interfered with his right to effective cross-examination.

The trial court has the broad discretion in determining the order of proof and in controlling trial procedures. *Wray v. State,* 547 N.E.2d 1062, 1066 (Ind.1989). Indiana Evidence Rule 611(a)(1) provides that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth." Evid.R. 611(a)(1). We will review the trial court's supervision of the presentation of evidence for an abuse of discretion. *State Farm Mutual Auto. Insurance Co. v. Shuman,* 175 Ind.App. 186, 200, 370 N.E.2d 941, 952 (1977).

After the State had finished with its initial examination of Shuter, it informed the trial court that it wished to recall Shuter at later time after it had filled in some evidentiary gaps. The trial court permitted the recall with the condition that Shuter's subsequent testimony would only consist of matters not covered in his previous testimony.

Given the trial court's discretion in determining the order of the presentation of evidence, we conclude that it was not an abuse of discretion for the trial court to allow the State to recall Shuter later in the presentation of its case. In justifying its reasons to the trial court, the State said that it wished to present the evidence in chronological order. Such a presentation would make the "presentation effective for the ascertainment of the truth." Evid.R. 611(a)(1). Thus it was not an abuse of discretion for the trial court to allow the State to recall Shuter.

Shepherd also argues that the recall denied him an opportunity to have an effective cross-examination by "seriously undermin[ing] counsel's ability to illicit [sic] truthful testimony from a witness during cross examination." Appellant's brief, p. 13. He maintains that a witness's testimony may be influenced by the testimony of other witnesses. However, because we do not find in the record any request by Shepherd to exclude Shuter from the courtroom to prevent him from hearing the testimony of other witnesses, he may not now argue that such a situation was prejudicial to him. Further, the trial court limited the scope of the recall to new evidence and Shepherd does not allege that the State exceeded that scope during either of the recalls. Also, Shepherd was given ample opportunity to cross-examine Shuter on each occasion. Thus, Shepherd has failed to demonstrate that he was prejudiced by the recalls. We conclude that the trial court did not abuse its discretion in allowing the State to recall Shuter.

### IV.

Next, Shepherd argues that the trial court erroneously admitted a diagram of the accident scene prepared by Shuter as part of his official accident report. He maintains that

the diagram is inadmissible pursuant to Evid.R. 803(8), which provides:

"(8) Public Records and Reports. Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form, of a public office or agency, setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: (a) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case; (b) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; (c) factual findings offered by the government in criminal cases; and (d) factual findings resulting from special investigation of a particular complaint, case, or incident, except when offered by the accused in a criminal case."

■ Shepherd asserts that the diagram is either an investigative report excluded by subsections (a) and (b) or a factual finding excluded by subsections (c) and (d). The Indiana Supreme Court recently addressed the application of this newly adopted rule of evidence in *Ealy v. State*, 685 N.E.2d 1047 (Ind.1997). In determining whether a coroner's autopsy report would be excluded under subsection (c), the supreme court set out a three step test [2]:

1) whether the report contains findings which address a materially contested issue in the case;

2) whether the record or report contains factual findings; and

3) whether the report was prepared for advocacy purposes or in anticipation of litigation

*Id.* at 1054. The supreme court, considering the first step in the analysis, concluded that

the autopsy report would not be inadmissible under 803(8) because the cause of death was not a materially contested issue in the case. *Id.* at 1055. Once the first step in the analysis is answered in the negative it is unnecessary to address the remaining two steps because the "safeguards provided by [Rule 803(8) ] sufficiently protect the defendant." *Id.* at 1054. However, for the sake of illustration, the supreme court continued its analysis with the next two steps of the analysis.

■ Applying the first step of this test to the case before us, we conclude that the diagram of the accident scene does relate to the identity of the driver, which was the sole contention at trial. In his testimony, Shuter indicated that the information contained in the diagram was used, along with other data he had collected as part of his investigation, in his determination of who was driving the car. Thus, because the diagram was related to a materially contested issue in the case, we must continue our analysis.

Next, we must determine whether the diagram contains factual findings. *Ealy*, 685 N.E.2d at 1054. Factual findings are conclusions drawn by an investigator from the facts. *Id.* at 1051. Here, the diagram illustrates the location of the tire marks on the pavement, gouges in the earth where the car left the roadway, the location of surrounding landmarks in relation to where the vehicle finally stopped, and the position of the vehicle. This information does not constitute factual findings but is merely a recordation of physical conditions as they were observed akin to "simple listings [and] a simple recordation of numbers...." *Id.* at 1054. Because we conclude that the diagram contains no factual findings, it is not necessary to address the final step of whether the findings in the report were prepared in anticipation of litigation. *Id.*

Furthermore, there is nothing in the record indicating that the diagram lacked trustworthiness as required by Rule 803(8). *Ealy*, 685 N.E.2d at 1054. Shuter, the person who prepared the diagram, authenticated

---

**2.** Although the supreme court in *Ealy* was specifically addressing subsection (c) of the Evid.R. 803(8), we conclude that the reasoning used to

develop this three step evaluation applies to subsections (a) through (d).

the document in his testimony and it was illustrative of his testimony elicited on cross examination and subsequent re-direct examination. Therefore, we conclude that the diagram was admissible under Rule 803(8).

### V.

Shepherd next contends that the supplemental Indiana Officer Standard Crash Report prepared by Shuter was erroneously admitted into evidence. Shepherd asserts that this report is inadmissible under either Ind.Code § 9–26–3–4 (Confidentiality and Use of Accident Reports) or under Evid.R. 803(8) (Public Records and Reports).

Ind.Code § 9–26–3–4 does make accident reports filed by persons involved in automobile accidents confidential and provides that such reports may not be used as evidence at trial. However, the statute also provides that "[t]his section does not apply to an accident report filed by a law enforcement officer...." I.C. § 9–26–3–4(a). Thus, Officer Shuter's accident report is not inadmissible under this statute.

To determine whether the report is inadmissible under Evid.R. 803(8), we must again apply the *Ealy* test discussed above. At first blush, this report is arguably inadmissible under Rule 803(8). The report lists Shepherd as the driver of the vehicle and his BAC measurement. This information directly relates to materially contested issues at trial. Also, Shuter's indication that Shepherd was the driver constitutes a factual finding.

However, even if we were inclined to conclude that the report would be inadmissible under Rule 803(8), the erroneous admission of the report would be harmless error. The erroneous admission of evidence is not grounds for reversal when the erroneous evidence is merely cumulative of other admitted evidence. *Hendricks*, 562 N.E.2d at 726. Aside from basic factual information about the accident, the supplemental report listed Shepherd as the driver and listed his BAC as measured after the accident. Other evidence to the same effect was admitted. Shuter testified, without objection, that he was of the opinion that Shepherd was the driver.

Also, the technician who ran the BAC test testified as to the results of the analysis. Because the report contained only cumulative evidence, its admission, even if erroneous, was harmless error. *See id.*

### VI.

The next issue raised by Shepherd is whether Shuter complied with the requirements of I.C. § 9–30–6–6 when obtaining the results of Shepherd's blood test conducted at the hospital after the accident. Shepherd contends that under I.C. § 9–30–6–6(g), Shuter was required to certify in writing that he had probable cause to believe that Shepherd had violated I.C. § 9–30–5 (Operating a Vehicle While Intoxicated). Pursuant to I.C. § 9–30–6–6(g):

"(g) A physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician *shall obtain a blood, urine, or other bodily substance sample* if the following exist:

(1) A law enforcement officer requests that the sample be obtained.

(2) The law enforcement officer has certified in writing the following:

(A) That the officer has probable cause to believe the person from whom the sample is to be obtained has violated IC 9–30–5.

(B) That the person from whom the sample is to be obtained has been transported to a hospital or other medical facility.

(C) That the person from whom the sample is to be obtained has been involved in a motor vehicle accident that resulted in the serious bodily injury or death of another.

(D) That the accident that caused the serious bodily injury or death of another occurred not more than three (3) hours before the time the sample is requested."

(emphasis added).

Shepherd contends that this section of the statute requires that for the blood test evidence to be admitted, the State must show

that Shuter gave written certification to the hospital to obtain the blood test results. However, we conclude that Shepherd has misconstrued this section of the statute. Section (g) requires written certification when a police officer is requesting the hospital or a physician to *collect* a sample from the suspect. Here, the record indicates that Shuter merely requested the results of a test that had already been performed. The section of the statute that governs a request for results of a blood test is section (a) which provides:

> "(a) A physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician, who:
>
> (1) obtains a blood, urine, or other bodily substance sample from a person, regardless of whether the sample is taken for diagnostic purposes or at the request of a law enforcement officer under this section; or
>
> (2) performs a chemical test on blood, urine, or other bodily substance obtained from a person;
>
> *shall deliver the sample or disclose the results of the test to a law enforcement officer who requests the sample or results as a part of a criminal investigation.* Samples and test results shall be provided to a law enforcement officer even if the person has not consented to or otherwise authorized their release."

I.C. § 9–30–6–6(a) (emphasis added). By its language, this section applies when a sample has already been obtained. It allows a police officer to obtain the sample or the results from the analysis of a sample that has already been collected when the results are needed as part of a criminal investigation. It appears that the legislature intended the written certification process in section (g) to be used in situations where the sample is being collected only for the purposes of a criminal investigation. Section (g) authorizes the investigating officer to compel medical personnel to collect a sample when the written certification requirements are met. These criteria become especially important when a suspect refuses to submit to the collection of a sample. However, where a

blood sample has already been collected, section (a) only requires that the officer indicate that the results are needed as part of a criminal investigation.

▮ Here, David Freed, the technician that collected Shepherd's blood sample, testified that he was asked by emergency room personnel to collect the sample and that he didn't know if the original request had been from a police officer. Also, Shuter testified that he requested the results of the blood test after advising hospital personnel that he need the results as part of a criminal investigation. There is no other evidence in the record that Shuter or any other officer requested hospital personnel to actually collect a sample and thus only the requirements of section (a) apply. Because Shuter properly advised the hospital of his reasons for requesting the results, we conclude that the statutory requirements for obtaining the results were satisfied. Therefore, the trial court did not abuse its discretion in admitting the results of the blood analysis.

## VII.

▮ Next, we must consider whether the protocol used for collecting Shepherd's blood after the accident was prepared by a physician as required by I.C. § 9–30–6–6. In setting out the procedure for disclosure of blood test results, the statute refers to disclosure of samples collected by "[a] physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician" I.C. § 9–30–6–6(a). Shepherd argues that the sample, collected by a lab technician, was not collected under a protocol "prepared" by a physician.

Freed testified that the protocol used was prepared by the technical staff and then subsequently reviewed and approved by a physician. In addition, the protocol contained the signature of Thomas A. Kocoshis, M.D., certifying that "the above steps [of the protocol] are the accepted policy and procedures for 'Sample Collection for Legal Whole Blood (Ethanol) Levels' at Kosciusko Community Hospital." Record, p. 394. This evidence is sufficient to indicate that the protocol was prepared by a physician as required by the

statute. Thus, Shepherd's argument has no merit.

## VIII.

 Finally, Shepherd argues that the computer printout containing the results of the blood alcohol concentration analysis was erroneously admitted because it constituted hearsay. Although Shepherd cites no authority for his position that the printout was inadmissible, we will nevertheless address the merits of his argument. Although not argued by the State at trial, we agree with the State's assertion in its brief that the printout is admissible under the business records exception to the hearsay rule. Indiana Evidence Rule 803(6) provides:

> "(6) Records of Regularly Conducted Business Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

To admit business records pursuant to this exception, the proponent of the exhibit may authenticate it by calling a witness who has a functional understanding of the record keeping process of the business with respect to the specific entry, transaction or declaration contained in the document. *Burp v. State*, 612 N.E.2d 169, 172 (Ind.Ct.App.1993). Here, Freed not only testified as to the routine process used by the hospital to produce the type of document offered, but, because he actually ran the test himself, he had personal knowledge of the steps performed to produce the results reported in the document. Therefore, we conclude that the printout falls within the hearsay exception for business documents and, as such, the trial court did not abuse its discretion in admitting the printout of the test results.

For the reasons stated in section I. of this opinion, we reverse Shepherd's convictions.

Reversed.

BARTEAU and FRIEDLANDER, JJ., concur.