# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TROY WILSON, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No.  29A02-1202-CR-88 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable J. Richard Campbell, Judge
Cause No.  29D04-1008-CM-3885

**September 6, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Troy Wilson ("Wilson") was convicted after a jury trial of Possession of Marijuana, as a Class A misdemeanor[1], and Driving While Intoxicated, as a Class A misdemeanor.[2] He now appeals his conviction for Driving While Intoxicated.

We affirm.

## Issue

Wilson presents two issues for our review, which we restate as a single issue: whether the trial court abused its discretion when it did not permit Wilson to elicit testimony concerning the reliability of toxicology test results from the Indiana Department of Toxicology ("the Department"), as reflected in an audit of testing performed by the Department from 2007 to 2009.

## Facts and Procedural History

At around 2:52 a.m. on December 6, 2009, Wilson was driving his car eastbound on 236th Street in Cicero. Cicero Police Department Officer Bradley Gorgas ("Officer Gorgas") was on patrol in the same area, driving westbound on 236th Street.

Wilson and Officer Gorgas both turned onto a side street, with Wilson's car in front of Officer Gorgas's. Officer Gorgas twice saw Wilson's car briefly cross over the centerline of the road and immediately swerve back toward the right-hand fog line. Officer Gorgas matched the speed of his police car to the speed of Wilson's car, and determined that Wilson

---

[1] Ind. Code § 35-48-4-11(1).

[2] I.C. § 9-30-5-2(a) & (b).

was travelling around fifty-five miles per hour in a forty mile-per-hour speed zone. Officer Gorgas therefore initiated a traffic stop.

Wilson pulled his vehicle over after driving for another two blocks. When Officer Gorgas reached the car, Wilson rolled his window down, and Officer Gorgas immediately smelled the odor of an alcoholic beverage. Wilson's speech was slurred and his eyes were bloodshot and glassy.

Wilson was belligerent and refused to comply with Officer Gorgas's request to conduct a field sobriety test. Wilson agreed to submit to a portable breath test for alcohol, but refused to comply with Officer Gorgas's request that he exit the car until Officer Gorgas opened the car door himself. Once Wilson exited the car, Officer Gorgas moved to handcuff Wilson, who clutched his chest and claimed to be having a heart attack. Officer Gorgas called an ambulance and secured Wilson to wait for the ambulance.

Once the ambulance arrived, paramedics began to treat Wilson while Officer Gorgas performed an inventory search of Wilson's car. The search recovered a small wooden "dugout" box that contained a small amount of a substance that was later determined to be marijuana. (Tr. at 104.) The ambulance transported Wilson to Riverview Hospital in Noblesville, and Officer Gorgas followed the ambulance on the ten-minute drive.

Wilson, accompanied by Officer Gorgas, was placed in the hospital's emergency room and received treatment for approximately one hour. Wilson had agreed to submit to a blood draw to test for the presence of alcohol in his system. At around 4:09 a.m., nurse Stacia Malloch ("Malloch") performed the blood draw using a testing kit provided to Officer

3

Gorgas by the Cicero Police Department, which kit the Police Department had received from the Indiana State Department of Toxicology. Officer Gorgas sealed the kit and took Wilson to the Hamilton County Jail, where he passed out unconscious on a bench in the booking room while Officer Gorgas completed paperwork. The testing kit was placed into evidence at the Cicero Police Department and was transported for testing and analysis at the Indiana State Department of Toxicology's laboratory.

On August 5, 2010, Wilson was charged with Possession of Marijuana, as a Class A misdemeanor ("Count I"); Operating a Vehicle While Intoxicated Endangering a Person, as a Class A misdemeanor ("Count II"); and Operating a Vehicle With an Alcohol Concentration Equivalent of 0.08 grams or more, as a Class C misdemeanor ("Count III").[3]

On September 22, 2010, Wilson filed a demand for a jury trial, which the trial court granted on September 28, 2010. After several continuances, a jury trial was conducted on December 8 and 9, 2011. During the trial, Wilson sought to introduce testimony from Scott Kriger, Ph.D. ("Dr. Kriger"), the Department's Director, concerning audits conducted of testing results produced by the Indiana State Department of Toxicology during 2007, 2008, and 2009. The State objected to the relevance of the proffered testimony. The trial court sustained the State's objections and ruled the testimony inadmissible.

At the conclusion of the trial, the jury found Wilson guilty of all charges. On January 4, 2012, the trial court entered judgments of conviction on Counts I and II and sentenced Wilson to 365 days imprisonment with 351 days suspended and 365 days of probation as to

[3] See I.C. § 9-30-5-1(a).

4

both Count I and Count II, with the sentences to run concurrently.

This appeal followed.

**Discussion and Decision**

Standard of Review

Wilson's appeal challenges the trial court's rulings that precluded him from eliciting testimony from Dr. Kriger concerning the results of audits conducted at the Indiana State Department of Toxicology Laboratory. We review a trial court's rulings on the admissibility of evidence at trial for an abuse of discretion. Lehman v. State, 926 N.E.2d 35, 37 (Ind. Ct. App. 2010), trans. denied. An abuse of discretion occurs when the trial court's decision is contrary to the logic and effect of the facts and circumstances before it, or when the trial court errs on a matter of law. Id. We do not reweigh evidence and consider any conflicting evidence in favor of the trial court's ruling, though we also consider any uncontested evidence favorable to the defendant. Lindsey v. State, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), trans. denied.

Further, even where the trial court has abused its discretion, we do not reverse the judgment on appeal where the trial court's error is harmless, that is, where the appealing party's substantive rights were not prejudiced by the trial court's decision. Ind. Trial Rule 61.

Analysis

Wilson's contention on appeal is that the trial court violated his confrontation rights under the Constitutions of the United States and the State of Indiana when it precluded him

from eliciting Dr. Kriger's testimony concerning results of the audit of the Department's laboratory.

The Confrontation Clause of the Sixth Amendment of the U.S. Constitution provides, in relevant part, that "the accused shall enjoy the right … to be confronted with the witnesses against him." The Indiana Constitution extends a similar guarantee. See Ind. Const. art. 1, § 13. In a line of cases beginning with Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause precluded from admission into evidence against a criminal defendant out-of-court testimonial statements except where the statement was made by an unavailable witness whom the defendant had a prior opportunity to cross-examine. Crawford, 541 U.S. at 53-54.

A subsequent case in the Crawford line, Melendez-Diaz, held that the right of confrontation encompasses a requirement that defendants be able to cross-examine laboratory analysts who created certificates of analysis concerning the nature of a particular substance— in that case, cocaine. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310-11 (2009). The Supreme Court later held that "surrogate testimony" of one analyst for another was not sufficient to satisfy this right, Bullcoming v. New Mexico, 564 U.S. ____, 131 S.Ct. 2705, 2714 (2011), and thus in almost any event "the analysts who write reports that the prosecution introduces must be made available for confrontation." Id. at 2715. This is because the defendant may seek to "expose any lapses or lies on the certifying analyst's part" during a cross-examination of that analyst. Id.

Here, Wilson's blood sample was taken on December 6, 2009 and analyzed by Dawn

Golden ("Golden"), an analyst with the Department's laboratory, in May and June 2011. Wilson cross-examined Golden concerning her work in the analysis of his blood sample. Wilson also cross-examined Dr. Kriger, who was the Director of the Department at the time Golden performed the analysis on Wilson's blood sample in May and June 2011. Both Golden's and Dr. Kriger's testimony concerned the basic and applied science underlying the operation of the gas chromatography instruments used to analyze and produce a result from Wilson's blood sample and Golden's analysis of the sample. Wilson was able at trial to elicit testimony from both witnesses concerning such matters as the calibration and maintenance of the gas chromatography machine, the meaning of the expiration dates printed on the testing kit issued to Officer Gorgas, and the specific laboratory and chain of custody protocols associated with the testing of the blood sample. From this, we conclude that Wilson was afforded the opportunity to cross-examine the analyst responsible for the test results showing the alcohol content of his blood, and thus there was no denial of his right to confrontation.[4]

Wilson also argues that even if the trial court's decision to preclude certain lines of questioning with Dr. Kriger did not violate the Confrontation Clause, the trial court nevertheless erred when it concluded that the evidence he sought to elicit from Dr. Kriger was irrelevant. Relevant evidence is that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable

---

[4] Indeed, we observe that Golden's analysis was in fact the second time testing had been performed on Wilson's sample and complied with the Department's procedures requiring that such occur once the analyst who performed the first testing on Wilson's blood in 2010 was no longer employed by the Department. That is, the Department's procedures properly contemplated the need for new analysis, and implemented those procedures in advance of and separate from the Supreme Court's ruling in Bullcoming.

or less probable than it would be without the evidence." Ind. Evidence Rule 401. Only relevant evidence is admissible at trial. Evid. R. 402.

Here, Wilson sought to examine Dr. Kriger concerning the results of audits performed at the Department's laboratory. During Wilson's offer of proof, he examined Dr. Kriger concerning the audit results. Dr. Kriger testified that the audits covered testing of substances for marijuana, cocaine, and alcohol performed from 2007 to 2009. The portion of the audits covering marijuana and cocaine tests had been completed. The portion of the audits covering blood-alcohol testing had been suspended, and Dr. Kriger had not received any information concerning the preliminary results of the blood-alcohol testing audit. Numerous personnel changes had occurred between the 2007 through 2009 testing period covered by the audit and Dr. Kriger's arrival at the Department in February 2011, and Dr. Kriger had introduced numerous changes to the testing and analysis procedures followed by the Department.

At the conclusion of the offer of proof, Wilson argued that this testimony was relevant to the jury's consideration of the results of the 2011 blood-alcohol testing performed on his blood sample. The trial court concluded that because the audit applied only to tests conducted in the years 2007, 2008, and 2009, any audit results would have no bearing upon the tests Golden performed on Wilson's blood sample in 2011. Wilson argues that these matters bear upon the jury's assessment of the credibility of the Department's analysis of his blood sample because his test "could have been part of an audit" and the audit had previously found problems with the analysis of samples for cocaine. (Appellant's Br. at 8.) Wilson contends that his samples were excluded from the audit because both the chronological scope

8

of the audit and the decision to suspend the audit were arbitrary, and these decisions "went directly to the credibility of Dr. Kriger, the credibility of the Department … and the credibility of the test results received from the Department." (Appellant's Br. at 8.)

We do not agree. The discontinuation of the audit on blood-alcohol samples and the period of time covered by the audits generally may bear upon the credibility of the Department's testing results from 2007 to 2009. But it is not clear that these questions bear upon the credibility of the Department's analysis here, where different procedures were executed by different analysts serving under a different Director more than 1 ½ years beyond the chronological scope of the audits. Thus, we cannot conclude that the trial court abused its discretion when it determined that the testimony Wilson sought to introduce was not relevant to the question of the reliability of Golden's testing and excluded that testimony from evidence.

**Conclusion**

Because Wilson's confrontation rights were not violated and the exclusion of irrelevant testimony by Dr. Kriger regarding the Department's audit results was not error, we affirm Wilson's convictions.

Affirmed.

RILEY, J., and CRONE, J., concur.