**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 15 2013, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KEVIN C. TANKERSLEY**
Winamac, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| COURTNEY A. WUETHRICH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 66A03-1206-CR-276 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PULASKI SUPERIOR COURT
The Honorable Patrick Blankenship, Judge
Cause No. 66D01-1111-CM-155

**February 15, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Following a bench trial, Courtney A. Wuethrich ("Wuethrich") was found guilty of Class C misdemeanor illegal consumption of alcohol and Class C misdemeanor operating a vehicle with a blood alcohol concentration equivalent to at least .08 but less than .15. Wuethrich appeals and argues that the trial court abused its discretion by admitting into evidence the blood test results, because the State failed to lay a sufficient foundation (1) that the protocol for the blood draw was prepared by a physician and (2) that the medical technician who drew Wuethrich's blood for testing adhered to the protocol.

We affirm.

### Facts and Procedural History

On October 29, 2011, at approximately 4:15 a.m., Pulaski County Sheriff's Deputy Ryan Austin ("Deputy Austin") observed a vehicle cross over the center line and fog line. Deputy Austin initiated a traffic stop of the vehicle, and Wuethrich, who was nineteen years old at the time, was identified as the driver of the vehicle. Deputy Austin observed that her eyes were bloodshot and glassy, her speech was a little slurred, and there was the odor of alcohol coming from the passenger compartment of the vehicle. Wuethrich admitted that she had consumed alcohol that evening. Deputy Austin then had Wuethrich exit her vehicle; he observed she was a little unsteady, and she failed the horizontal gaze nystagmus test. Accordingly, Deputy Austin advised Wuethrich of Indiana's implied consent law, and Wuethrich consented to a chemical blood test.

Deputy Austin transported Wuethrich to Pulaski Memorial Hospital, a state-licensed hospital, and obtained an Indiana State Department of Toxicology blood draw

2

kit. Pulaski Memorial Hospital has two policies governing the collection of blood samples – Hospital Policy 9-3 ("Policy 9-3") and Hospital Policy 9.16 ("Policy 9.16"). Policy 9-3 provides a protocol for sample collection for legal purposes. Policy 9.16 provides a protocol for the chemical collection of blood and urine for legal purposes.

At 5:10 a.m., Jessica Keller ("Keller"), a medical laboratory technician at the hospital, performed Wuethrich's blood draw. She used the blood draw kit provided by Deputy Austin, identified Wuethrich using two identifiers, applied the tourniquet, cleaned the site with Betadine, inserted the needle at a 30 degree angle, drew the blood using the tubes from the blood draw kit, and inverted the two tubes five to ten times to mix the additive. One tube contained 8.6 mL of blood and the other contained 6.5 mL of blood. Keller then conveyed the tubes to Deputy Austin and filled out her portion of the Department of Toxicology drug analysis request form. Deputy Austin mailed the sealed and initialed tubes in the kit to the lab for testing. The lab received the tubes in sealed condition and determined that the blood alcohol concentration was .09.

Wuethrich was charged with Class A misdemeanor operating a motor vehicle while intoxicated endangering a person, Class C misdemeanor illegal consumption of alcohol, and Class C misdemeanor operating a motor vehicle with at least eight-hundredths (0.08) gram of alcohol but less than fifteen-hundredths (0.15) gram of alcohol per 100 milliliters of blood. At her bench trial on May 22, 2012, Wuethrich objected to the admission of the blood test results on several grounds including: lack of foundation that the protocol was signed by a physician and failure to follow the hospital's policies by

3

withdrawing 6.5 mL in one tube, instead of 7 mL.  The trial court overruled the objections and admitted the blood test results.

The trial court found Wuethrich guilty of Class C misdemeanor illegal consumption of alcohol and Class C misdemeanor operating a vehicle with a blood alcohol concentration of at least .08 but less than .15, and not guilty of Class A misdemeanor operating while intoxicated endangering a person.  The trial court imposed concurrent sixty-day sentences with the sentences suspended and placed Wuethrich on probation for six months.

Wuethrich now appeals.

**Standard of Review**

Wuethrich argues that the trial court abused its discretion by admitting her blood alcohol test results into evidence.  A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion.  Lehman v. State, 926 N.E.2d 35, 37 (Ind. Ct. App. 2010), trans. denied (citing Iqbal v. State, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004)).  An abuse of discretion occurs if the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law."  Boatner v. State, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010).

**I.    Preparation of Protocol**

Wuethrich argues that although Keller was trained in obtaining bodily substances, the State failed to lay a proper foundation that Keller was acting under the direction of, or under protocol *prepared* by, a physician.   Under Indiana Code section 9-30-6-6(a), the blood sample must be drawn by "[a] physician or a person trained in obtaining bodily

4

substance samples and acting under the direction of or under a protocol prepared by a physician[.]"

In Shepherd v. State, this court held that the technician's testimony that the protocol was prepared by technical staff but signed and reviewed by a doctor was sufficient evidence to indicate that the protocol was prepared by a physician as required by the statute. 690 N.E.2d 318, 328-29 (Ind. Ct. App. 1997), trans. denied, disagreed with on other grounds by Cheatham v. State, 819 N.E.2d 71, 76 n.1 (Ind. Ct. App. 2004). Thus, Shepherd established that a physician approving and signing the protocol was sufficient evidence that the document was "prepared" by the physician as required by the statute. Id.

Here, Keller testified that two different physicians—Doctor Dave Soper and Doctor Clint Kauffman—had initialed and "approved" the two hospital policies establishing the protocols for withdrawing blood.[1] Tr. pp. 65-66. Moreover, the State entered the initialed policies into evidence without objection. Ex. Vol., State's Exs. D-E. While the State did not establish who actually drafted the protocols, the State established evidence that physicians had approved them. Accordingly, we conclude there was sufficient evidence that a physician prepared the protocols as required by Indiana Code section 9-30-6-6(a). See Shepherd v. State, 690 N.E.2d at 328-29.

## II. Adherence to Protocol

---

[1] In regard to Wuethrich's assertion that Keller "claims" the two doctors signed it but did not actually see them initial the document, we note that there is no evidence in the record that refutes Keller's testimony that the initials belong to the two physicians.

5

Wuethrich also argues that the trial court abused its discretion by admitting the blood test results, because the State failed to lay a foundation that Keller adhered to the protocol prepared pursuant to Indiana Code section 9-30-6-6(a). On appeal, Wuethrich alleges Keller did not adhere to protocol in three ways, which we reorganize and restate as follows:

A. Keller drew two tubes of Wuethrich's blood with one tube containing 6.5 mL and one tube containing 8.6 mL but protocol required a minimum of 7 mL to be drawn;
B. Keller used the Department of Toxicology Test Kit, rather than the Indiana State Police Suspect Evidence Collection Kit stated in the protocol; and
C. Keller inverted the tube containing the collected blood five to ten times when protocol said the tube should be inverted five times.

The State argues that since the blood draw occurred at a licensed hospital, this is sufficient to establish that the medical technician technically adhered to the statute. Appellee's Br. at 9. The State relies on Boston v. State, where a hospital employee testified that she had followed the hospital's protocol in drawing blood from the patient, and this court held that since the blood was drawn at a "state-licensed hospital" the blood draw technically adhered to protocol. 947 N.E.2d 436, 444 (Ind. Ct. App. 2011). While it is tempting to apply this holding to all blood tests drawn at licensed hospitals without addressing the cases on the merits, there have been and will likely be circumstances where blood drawn by a person at a licensed hospital still fails to substantially adhere to Indiana Code section 9-30-6-6(a). See e.g., Combs v. State, 895 N.E.2d 1252, 1258 (Ind. Ct. App. 2008) (holding that the record was "devoid of evidence" that the medical technologist at the local hospital had followed a protocol prepared by a physician and

6

that, as a result, the trial court abused its discretion in admitting the results of Combs's blood alcohol test into evidence).[2] Thus, we prefer to address this case on the merits.

Under Indiana Code section 9-30-6-6(a), when a medical technician draws the blood sample, he or she must "act[] *under the direction of or under a protocol* prepared by a physician[.]" (emphasis added). In interpreting this statute, "[w]e presume that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." State v. Bisard, 973 N.E.2d 1229, 1235 (Ind. Ct. App. 2012), trans. denied. Indiana Code chapter 9-30-6 is aimed at keeping "roadways safe by removing the threat posed by the presence of drunk drivers" and to that end it is "'designed as a tool to acquire evidence of blood alcohol content rather than as a device to exclude evidence.'" Id. at 1232 (quoting Abney v. State, 821 N.E.2d 375, 379 (Ind. 2005)), trans. denied.

In Bisard, this court noted that the General Assembly has taken a broader approach to the admissibility of blood test results compared to breath tests results[3] and rejected the

---

[2] To the extent Wuethrich likens this case to Combs, we disagree. In Combs, the State had not presented *any* evidence that the medical technologist who drew the blood was acting under protocol prepared by a doctor. 895 N.E.2d at 1258; see also Bisard, 973 N.E.2d at 1235 (noting that Combs was "relatively weak precedent" because the State failed completely in offering a foundation for admissibility).

[3] In State v. Bisard, this court explained that the Indiana Code "reflects starkly different legislative policies" on the admissibility of breath tests and blood tests. 973 N.E.2d at 1235. While Indiana Code section 9-30-6-5(d) has explicitly barred breath test evidence when certain procedures are not followed, "blood evidence is generally admissible subject to rules of evidence." Id at 1235-36. The rationale behind the differences in the legislative treatment of blood and breath tests is that "[b]lood samples are obtained and analyzed by medical professionals who are trained to produce reliable results[.]" Id. Accordingly, when the "level of expertise" involved is greater, we give the expert more discretion regarding the procedural particulars. Id. at 1236 (quoting Hopkins v. State, 579 N.E.2d 1297, 1303 (Ind. 1991)) (internal quotation marks omitted). However, even in the breath test context, our supreme court has allowed the admission of evidence where the deviation from protocol was *de minimis*. State v. Cioch, 908 N.E.2d 1154, 1157 (Ind. 2009) (holding that the breath test was admissible despite the inaccurate timestamp on the breath test print out).

argument in that case that the blood test result was inadmissible when the technician reversed protocol steps, because there was "no contention on appeal that this mattered in any real-world sense, much less any medical evidence so suggesting." 973 N.E.2d at 1237, 1239. Thus, a person trained in obtaining samples can still be found to adhere to protocol if the deviations do not matter "in any real-world sense" or if the deviations do not "compromise[] the reliability of the samples." 973 N.E.2d at 1237, 1239. First, however, we must discern whether there even was a deviation from protocol.

A. *The Two Vials*

Wuethrich first argues that the incorrect amount of blood was collected. We note that Policy 9.16 does not specify that 7 mL was required per tube, but only requires that a minimum of 7 mL of blood be collected. The State pointed out at trial that Policy 9.16 requires a minimum of 7 mL but recommends 14-20 mL should be collected. Since the tubes only hold 10 mL, this supports the interpretation that a total of 7 mL is required, not 7 mL per tube. Here, 15.1 mL of Wuethrich's blood was collected in total, well in excess of the minimum volume required under protocol. Accordingly, the evidence supports a determination that Keller did not deviate from hospital protocol in the amount of blood she withdrew. However, even if the protocol required 7 mL per tube, Wuethrich did not contend that the amount of blood in the tube affected the reliability of the test, and the record reflects the contrary. Dawn Golden ("Golden"), a forensic scientist with the Indiana State Department of Toxicology, testified that she was able to obtain a result from the sample. Tr. p. 107. Thus, we conclude Keller adhered to protocol in the amount of blood she collected.

B. *The Test Kit Used*

The fact that Keller did not use the Indiana State Police Suspect Evidence Collection Kit as instructed by Policy 9-3, is not dispositive, and it was only a minor deviation from the policy, because she used the test kit provided by the Indiana State Department of Toxicology, which is a test kit that has been used in other cases where the blood samples were properly admitted. See e.g., Wilson v. State, 973 N.E.2d 1211, 1213 (Ind. Ct. App. 2012). In addition, Policy 9-3 indicates that the reason the Indiana State Police Suspect Evidence Collection Kit was to be utilized was "to establish the chain of custody[,]" which thereby suggests that use of this particular test kit was not required for a medical or chemical test purpose. See Ex. Vol., State's Ex. D. Moreover, the protocol did not require a particular laboratory conduct the testing. Since the Department of Toxicology was performing the analysis of the samples, it was appropriate to use their test kit.

C. *The Number of Inversions*

Wuethrich also asserts that protocol was not adhered to because the vials of her blood were inverted in excess of the five times called for in the protocol. First, this argument was waived when Wuethrich failed to object to the admission of the blood test results on this basis at trial. See Fair v. State, 266 Ind. 380, 391 (Ind. 1977) (holding that when the basis for the objections differs from the basis at trial, it need not be treated on appeal). Instead, Wuethrich only objected to the admission of the test results on grounds that the incorrect volume was collected in the test tube and that the correct test kit was not utilized. See Tr. pp. 114-20. Waiver notwithstanding, this deviation from protocol

was minor and no evidence was admitted suggesting that this variation compromised the reliability of the sample.  We also note that the protocol did not express that five was the maximum number of times the tubes could be inverted.  See Ex. Vol. State's Ex. E.  For these reasons, we conclude inversion of the vials between five and ten times was a minor deviation from protocol that did not compromise the reliability of the sample.

Each of these deviations was minor and did not compromise the reliability of the samples.  The trial court did not err in its decision to admit the blood alcohol test results into evidence.

## Conclusion

We conclude that the State laid a sufficient foundation that a physician prepared the protocol used to draw Wuethrich's blood and that any deviations from that protocol were minor and did not compromise the reliability of the samples.   For all these reasons, we affirm the trial court's decision to admit the blood alcohol test results in this case.

Affirmed.

KIRSCH, J., and CRONE, J., concur.