**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**




ATTORNEY FOR APPELLANT:

**BRYAN L. COOK**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| FRANK T. GRANNAN, )<br>)<br>Appellant-Defendant, )<br>)<br>vs. )<br>)<br>STATE OF INDIANA, )<br>)<br>Appellee-Plaintiff. ) | No. 79A02-1209-CR-696 |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Michael A. Morrissey, Judge
Cause No. 79D06-1111-CM-2043

**May 2, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Frank Grannan appeals his convictions for Operating a Vehicle with an Alcohol Concentration Equivalent to at Least Eight-hundredths (.08) Gram of Alcohol but Less than Fifteen-hundredths (.15) Gram of Alcohol per 100 Milliliters of Blood (Operating with an ACE of .08)[1] and Operating a Vehicle with a Controlled Substance or its Metabolite in the Body.[2]

At Grannan's bench trial, the State offered into evidence the protocol followed by the registered nurse who drew Grannan's blood and the results of two blood tests indicating that Grannan had a blood alcohol concentration greater than 0.08 gram per 100 milliliters of blood and that Grannan's blood had tested positive for THC metabolites. In admitting the evidence, the trial court overruled Grannan's objection that the State failed to establish an adequate foundation for the admission of the evidence because it had not proved that the blood draw protocol had been prepared by a physician as required by Indiana Code section 9-30-6-6(a).

On appeal, Grannan raises the same issue for our review. Relying in large part on our previous opinion in State v. Bisard, 973 N.E.2d 1229 (Ind. Ct. App. 2012), trans. denied, we conclude that neither the statute cited by Grannan nor the Indiana Rules of Evidence required the exclusion of the hospital protocol or the blood test results. We therefore affirm the judgment of the trial court.

---

[1] Ind. Code § 9-30-5-1(a).

[2] I.C. § 9-30-5-1(c).

## FACTS

Shortly after midnight on Halloween night in 2011, Indiana State Police Sergeant Ann Hampton stopped a vehicle that she had observed traveling thirteen miles per hour over the posted speed limit. Sergeant Hampton identified Grannan as the driver of the vehicle. After Sergeant Hampton commented on the smell of alcohol coming from Grannan, Grannan told her that "he had a few beers at a friend's party" and that he had stopped drinking "approximately ten minutes before [Sergeant Hampton] stopped him." Tr. p. 65. Sergeant Hampton also noticed that Grannan's "speech was slurred" and that his eyes were "glassy and bloodshot." Id.

Sergeant Hampton asked Grannan to perform three sobriety tests, and he failed all three. During the tests, Sergeant Hampton observed that Grannan's balance was unsteady. A portable breath test confirmed the presence of alcohol on Grannan's breath. After advising Grannan of Indiana's implied consent law, Sergeant Hampton informed Grannan that she had probable cause to believe that he was intoxicated and asked him to consent to a chemical test. Grannan refused to consent, so Sergeant Hampton obtained a search warrant and transported Grannan to St. Elizabeth Central Hospital for a blood draw.

At approximately 2:25 a.m., registered nurse Jonathan Forss drew Grannan's blood according to a protocol that hospital employees followed for a "legal blood draw." Tr. p. 102. Forss drew two samples of Grannan's blood. Forss sent one sample to the hospital laboratory, which returned a blood alcohol concentration result of 0.87 gram per

3

100 milliliters. Forss then prepared a chain of custody form for the other blood sample and gave that sample to Sergeant Hampton, and Sergeant Hampton forwarded the sample to AIT Laboratories. The AIT Laboratories test indicated that Grannan's blood had a blood alcohol concentration level of 0.89 gram per milliliters and that it tested positive for THC metabolites.

The State charged Grannan with Count I, operating while intoxicated, a class C misdemeanor; Count II, operating with an ACE of .08, a class C misdemeanor; Count III, speeding, an infraction; and Count IV, operating with a controlled substance or its metabolite in the body, a class C misdemeanor.

At Grannan's bench trial on June 12, 2012, Forss testified that he drew Grannan's blood according to a physician's orders. Specifically, Forss testified that in Grannan's chart, a physician had circled "ETOH" and written "legal" next to it. Tr. p. 123. According to Forss, this meant that he was supposed to perform a legal blood draw, which differs in protocol from a regular blood draw. In a legal blood draw, the hospital protocol requires the use of Betadine to clean a patient's arm before blood is drawn, but in a regular blood draw, an alcohol swab is used. Additionally, hospital employees wash their hands with soap and water prior to a legal blood draw, but they wash their hands with alcohol foam prior to a regular blood draw. Forss testified that he had performed "[h]undreds and hundreds" of regular blood draws and "[p]robably 15 to 25" legal blood draws. Id. at 125.

4

The State offered into evidence the hospital protocol, which Forss testified that he had printed that morning from a hospital database of standard procedures only accessible by employees on a closed network. The protocol document was dated May 2001 and indicated that it had been revised in January 2008. It also had signature lines for approval from five hospital administrators, but the document offered for admission had not been executed by any of these persons.[3] Grannan's defense counsel objected to the admission of the protocol and the blood test results, alleging that the State had failed to establish a proper foundation for the admission of the evidence because it had not shown that a physician had prepared the protocol.

When asked why the State did not have a signed copy of the protocol, the prosecutor replied, "Uh, we don't have it; that's all I can say; we don't have it." Tr. p. 111. In response to further questioning from Grannan's defense counsel, Forss testified that Dr. Seals, the medical director in charge of St. Elizabeth Central Hospital, is responsible for all of the hospital's policies, procedures, and protocols. Forss also testified that at least two of the persons who would have approved the protocol per the signature lines were physicians.

The trial court admitted the hospital protocol and the two test result documents. In admitting the protocol, the trial court stated to Grannan's defense counsel, "You voiced your concerns, but I think that goes to the weight I'm going to give this." Tr. p. 120.

---

[3] Specifically, the document contained signature lines for: (1) Division Director, Laboratory Services; (2) Medical Director, Laboratory Services; (3) Vice President, Plant Operations; (4) Division Director, Emergency Services; and (5) Vice President and Director of Nursing.

5

The trial court found Grannan guilty of Counts II, III, and IV and not guilty of Count I. After merging Count IV with Count II, the trial court sentenced Grannan to thirty days of incarceration and ordered him to pay a $500 fine. However, the trial court suspended Grannan's sentence and the fine and placed him on probation for 180 days. Grannan now appeals.

## DISCUSSION AND DECISION

Grannan's sole contention on appeal is that the State failed to lay an adequate foundation for the admission of the hospital protocol and the blood test results. Accordingly, Grannan asserts that the trial court erred in admitting the blood test results that proved that he had committed the two status offenses of operating with an ACE of .08 and operating with a controlled substance or its metabolite in the body.

Generally, a trial court has broad discretion in ruling on the admissibility of evidence, and we will reverse a trial court's decision to admit or exclude evidence only for an abuse of that discretion. State v. Hunter, 898 N.E.2d 455, 457 (Ind. Ct. App. 2008). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the trial court. Id. at 458.

Grannan contends that the evidence admitted at his trial was inadmissible because the State did not show that his blood was taken in compliance with Indiana Code section 9-30-6-6(a), which provides:

> A physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician, who:

6

(1) obtains a blood, urine, or other bodily sample from a person, regardless of whether the sample is taken for diagnostic purposes or at the request of a law enforcement officer under this section; or

(2) performs a chemical test on blood, urine, or other bodily substance obtained from a person;

shall deliver the sample or disclose the results of the test to a law enforcement officer who requests the sample or results as a part of a criminal investigation. Samples and test results shall be provided to a law enforcement officer even if the person has not consented to or otherwise authorized their release.

More particularly, Grannan asserts that the trial court erred in admitting the hospital protocol and blood test results into evidence because the State failed to prove that Forss was acting under the direction of or under a protocol prepared by a physician.

Our Supreme Court has stated that Indiana's implied consent statutes, located at Indiana Code chapters 9-30-6 and 9-30-7, were "designed as a tool to acquire evidence of blood alcohol content rather than as a device to exclude evidence." Abney v. State, 821 N.E.2d 375, 379 (Ind. 2005). Nevertheless, Grannan maintains that "technical adherence to a physician's directions or protocol prepared by a physician is a foundational requirement for admission of laboratory blood tests which cannot be ignored." Appellant's Br. p. 6 (citing Hopkins v. State, 579 N.E.2d 1297, 1303 (Ind. 1991)).[4]

---

[4] In support of this proposition, Grannan directs us to Combs v. State, 895 N.E.2d 1252 (Ind. Ct. App. 2008), and Shepherd v. State, 690 N.E.2d 318 (Ind. Ct. App. 1997). In Combs, this Court held that it was an abuse of discretion for the trial court to admit blood test results purportedly obtained through Indiana's implied consent statutes when the State presented "absolutely no evidence" that the medical technologist who drew the defendant's blood was acting under a physician-prepared protocol. 895 N.E.2d at 1258. However, the admission was found to be harmless error because sufficient independent evidence of Combs's intoxication existed to support his conviction for operating while intoxicated. Id. at 1259.

Notwithstanding Grannan's contention, this Court has recently re-examined the effect of Indiana Code section 9-30-6-6(a) on the admissibility of blood test results. In State v. Bisard, 973 N.E.2d 1229, 1235-36 (Ind. Ct. App. 2012), trans. denied, we noted that "the General Assembly has explicitly barred evidence in breath tests where certain processes are not followed but has not done so in blood tests." Id. at 1235. Coupling this observation with our Supreme Court's pronouncement that "the more technical the test involved, the less particularized as a matter of law are the foundational requirements," Hopkins, 579 N.E.2d at 1303, the Bisard Panel concluded that "[w]here the Code does not direct exclusion, the court must decide admissibility with reference to the Code and the Rules of Evidence." Id. at 1236.

When read together, Indiana Code sections 9-30-6-2(c) and 9-30-6-15(a) provide that evidence of the blood alcohol concentration of a person charged with an offense under Indiana Code chapter 9-30-5 is generally admissible as long as the test was administered within three hours from the time when a police officer had probable cause to believe the person had committed an offense under the chapter. And with regard to the Rules of Evidence, all relevant evidence is generally admissible unless otherwise provided by law. Bisard, 973 N.E.2d at 1236.

This is not to say that it is wholly irrelevant whether or not Forss was trained in obtaining bodily substance samples and acting under the direction of a physician or under

---

Conversely, in Shepherd, this Court held that the trial court properly admitted blood test results when the technician who drew the defendant's blood testified that the protocol he followed had been "prepared by technical staff and subsequently reviewed and approved by a physician," and the protocol contained the signature of a physician. 690 N.E.2d at 328.

8

a physician-prepared protocol. Indeed, such a question certainly goes to the reliability of the test results and may render the results subject to exclusion under Evidence Rule 403. See id. (affirming the admissibility of blood test results after concluding that none of the Rule 403 factors, such as unfair prejudice, confusion of the issues, misleading the jury, undue delay, or cumulative evidence, were present when a medical assistant deviated slightly from a physician-approved protocol).

Here, Forss testified that he performed a legal blood draw pursuant to a physician's orders on Grannan's chart and that he followed the hospital protocol for a legal blood draw. Tr. p. 102, 123. Additionally, Forss testified that he had printed the protocol admitted into evidence from a closed-server database available to only hospital employees and that the hospital's medical director, a physician, was responsible for the protocol. Id. at 105, 107. Given the trial court's broad discretion in admitting or excluding evidence, we cannot say that the trial court erred in admitting the hospital protocol or Grannan's blood test results pursuant to Rule 403. And as for the weight of the evidence once it was admitted, this is for the finder of fact to determine and will not be disturbed by this Court on appeal. See Hopkins, 579 N.E.2d at 1305.

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.