Jeremy W. **COMBS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 69A01–0806–CR–259.

Court of Appeals of Indiana.

Nov. 5, 2008.

Transfer Denied Jan. 8, 2009.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Following a jury trial, Jeremy W. Combs was convicted of Class D felony operating a vehicle while intoxicated. On appeal, he argues that the trial court abused its discretion in admitting the results of his blood alcohol test into evidence. Specifically, Combs contends that the search warrant used to obtain his blood was not based upon probable cause and that the State failed to lay a proper foundation for admitting the test results because it did not present evidence that the person who drew Combs's blood acted under proper protocol. We conclude that the search warrant was based upon probable cause but that the State failed to lay a proper foundation for admitting the test results, namely, that Combs's blood was drawn under the direction of or under a protocol prepared by a physician. Therefore, the trial court abused its discretion in admitting this evidence. However, this error is harmless because the evidence is otherwise sufficient to support Combs's conviction. We therefore affirm.

### Facts and Procedural History

At approximately 12:20 a.m. on April 14, 2006, Sergeant Marvin Smith of the Ripley County Sheriff's Department was in his police car conducting a routine patrol outside of Sunman. He saw a vehicle turn left at a stop sign without using a turn

signal, "almost at the last minute." Tr. p. 40. Sergeant Smith followed the vehicle briefly and conducted a traffic stop.

Combs was the driver of the vehicle, and Jimmy Owens was a passenger. Sergeant Smith asked Combs for his license and registration and observed Combs fumble with his wallet. *Id.* at 44. He also saw two empty beer cans next to Owens and a case of beer on the car's back seat. *Id.* at 45. He detected the odor of alcohol on Combs's breath and noticed that his speech was slurred and his eyes were bloodshot. *Id.* at 46. Sergeant Smith asked Combs whether he had consumed any alcohol, and Combs admitted to drinking several beers earlier in the evening. *Id.* At that point, Sergeant Smith asked Combs to get out of his vehicle.

Combs staggered and swayed as he walked toward the police car. *Id.* at 47. Sergeant Smith then administered several field sobriety tests. *Id.* at 48. First, he administered a "one-legged-stand test," which he believed Combs failed. However, he decided to give Combs "the benefit of the doubt" because Combs claimed to have flat feet. *Id.* Combs then failed the "walk and turn" test by failing to touch his heel to his toes, by not counting aloud, and by stepping off of the given line. *Id.* at 49–50. Combs next failed the "finger to nose test" because he could not touch his finger to his nose. *Id.* at 50. Finally, Combs failed the "count backwards test" by missing and repeating numbers. *Id.* By this time, Sergeant Smith believed that Combs was intoxicated, and he gave Combs a portable breath test and read him Indiana's implied consent law. *Id.* at 52–

53. Combs refused to take a data master chemical breath test. *Id.* at 53. Sergeant Smith then arrested Combs and sought a search warrant to retrieve his blood for alcohol testing. *Id.* at 55.

The trial court issued a search warrant for Combs's blood based upon Sergeant Smith's probable cause affidavit. Combs was transported to a local hospital, and medical technologist Pamela J. Smith ("Medical Technologist Smith") drew Combs's blood approximately two hours after the initial traffic stop. *Id.* at 60. Subsequent testing of the blood revealed that Combs's blood alcohol concentration was .084. Appellant's App. p. 28.

The State charged Combs with Count I: Class C misdemeanor operating a vehicle while intoxicated,[1] Count II: Class D felony operating a vehicle while intoxicated having a previous operating while intoxicated conviction,[2] and Count III: public intoxication, a Class B misdemeanor.[3] *Id.* at 8, 16–18. The State later sought and received permission to charge Combs with Count IV: Class C misdemeanor operating a vehicle while intoxicated with a blood alcohol content of 0.08 or greater.[4] *Id.* at 25–27. Before trial, Combs sought to suppress the results of his blood test. The trial court denied his motion, Suppression Hrg. Tr. p. 73, and the matter proceeded to jury trial. During trial, Combs objected to the admission of his blood test results, arguing that the search warrant was not based upon probable cause and that the State laid an improper foundation for the results. Tr. p. 156–58, 160–63. The trial court admitted the test results into evidence. *Id.* at 205. After the presentation

---

1. Ind.Code § 9–30–5–2(a).

2. Ind.Code § 9–30–5–3(a)(1).

3. Ind.Code § 7.1–5–1–3.

4. Ind.Code § 9–30–5–1(a).

of evidence and while the jury deliberated, Combs stipulated that he had a prior conviction for operating while intoxicated within five years of this offense. *Id.* at 261. The jury found Combs guilty of Counts I, II, and IV, and the court dismissed Count III. Finding that Counts I and IV merged into Count II, the trial court vacated them and entered judgment of conviction for Class D felony operating a vehicle while intoxicated. Appellant's App. p. 131, 136. After a sentencing hearing, the trial court sentenced Combs to 545 days with 365 days suspended to probation. *Id.* at 131. Combs now appeals.

## Discussion and Decision

The issue on appeal is whether the trial court abused its discretion in admitting the results of Combs's blood alcohol test into evidence. Specifically, Combs contends that the search warrant used to obtain his blood was not based upon probable cause and that the State failed to lay a proper foundation for admitting the test results because it did not present evidence that the person who drew Combs's blood acted under proper protocol.

■■■ Generally, a trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *McHenry v. State,* 820 N.E.2d 124, 128 (Ind.2005). We will reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State,* 678 N.E.2d 386, 390 (Ind.1997), *reh'g denied.* Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission of evidence constituted harmless error. *Micheau v. State,* 893 N.E.2d 1053, 1059 (Ind.Ct.App.2008).

### I. Probable Cause

■■■ In support of his position that the trial court abused its discretion in ad-

mitting the blood test results into evidence, Combs first argues that the search warrant that allowed the hospital to draw Combs's blood was not based upon probable cause. The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution require search warrants to be supported by probable cause. *See Query v. State,* 745 N.E.2d 769, 771–72 (Ind.2001). The task of the trial court when deciding whether to issue a search warrant is "simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 771 (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). On appeal, this Court's duty is to determine whether the issuing court had a "substantial basis" for concluding that probable cause existed. *Id.* We examine whether "reasonable inferences drawn from the totality of the evidence support the determination of probable cause." *Id.*

Here, the issuing court had a substantial basis for concluding that probable cause existed. In support of his request for a search warrant to draw Combs's blood, Sergeant Smith presented an affidavit of probable cause informing the trial court that he stopped Combs after Combs failed to use a turn signal while driving. Appellant's App. p. 9, 13. Sergeant Smith attested to the following observations of Combs: "Odor of an alcoholic beverage on the individual[']s breathe [sic]," "Alcohol beverage containers in view," "Speech was THICK," "Eyes were BLOODSHOT," "Balance was UNSTEADY," "Staggered from vehicle," "Failed given sobriety tests," and "SUBJECT STATED HE HAD BEEN DRINKING[.]" *Id.* at 9–10. The affidavit also attested that Combs re-

fused a chemical breath test. *Id.* at 13. We find that these circumstances reflected a fair probability that evidence of intoxication would be found in Combs's blood sample. Even if we accept Combs's argument that several of the field sobriety tests administered by Sergeant Smith were improperly conducted and considered by the issuing court, the other circumstances detailed in the probable cause affidavit created a substantial basis for concluding that probable cause existed to support the search warrant. The trial court did not abuse its discretion in this regard.

## II. Failure to Lay a Proper Foundation

▮ Next, Combs argues that the trial court abused its discretion in admitting into evidence his blood test results because the State failed to lay a proper foundation for admitting them. Specifically, Combs contends that the State failed to present evidence that the person who drew Combs's blood was acting under the direction of or under a protocol prepared by a physician as required by Indiana Code § 9–30–6–6.

Indiana Code § 9–30–6–6 provides that blood samples collected at the request of a law enforcement officer as part of a criminal investigation must be obtained by "[a] physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician[.]" Ind.Code § 9–30–6–6(a). This is not a requirement that may be ignored. As our Supreme Court has recognized, "the foundation for admission of laboratory blood drawing and testing results, by statute, involves technical adherence to a physician's directions or to a protocol prepared by a physician." *Hop-*

*kins v. State,* 579 N.E.2d 1297, 1303 (Ind. 1991).

Here, the State called Medical Technologist Smith to testify at trial about the process she used to collect Combs's blood sample. She testified about her educational background and professional experience drawing blood samples and conducting chemical analyses. Tr. p. 73–77. Regarding the procedure used to draw blood samples, Medical Technologist Smith testified as follows:

Q. What do you do, how do you put, let's say a subject['s] blood into those vials?

A. Well, you'd have a double ended needle with an adapter, you know a holder, and the needle would go into the arm and then you would push this onto the other end of the needle and it would cause a vacuum that pulls the blood into the tube.

Q. And there are two tubes in there, correct?

A. Yes.

Q. And you would just fill one up and then fill the other one up, is that how it is done?

A. Yes.

Q. And what do you do once you've filled them up?

A. Then you mix them up really good and then label them with that patient['s] name on them.

Q. Now, when you are presented with an arm, do you use a disinfectant on that arm?

A. Yes.

Q. And what disinfectant do you use on

a law draw? [5]

A. On a law draw, betadine.

Q. And why is that?

A. Because it doesn't have any alcohol in it, so there is no contamination from alcohol in the specimen.

Q. And would it be fair to say that the other option is isopropyl alcohol, is that right or wrong? Like on another draw, not a law draw?

A. Right.

Q. I assume that you'd use a clean needle, is that right?

A. Yes.

Q. And you also stated that you had to shake them up to make sure that it was mixed up?

A. Yes.

Q. Now, what are you referring to as to making sure that it is mixed up? What are you referring to then?

A. There's an anti coagulant that is in the tube and in this case, it is a dry powder and you just mix it up and make sure that is good and mixed so that the blood doesn't clot.

Q. That is what an anticoagulant does is make sure the blood doesn't clot?

A. Yes.

Q. No more questions your honor.

*Id.* at 76–77. Later during the trial, outside of the presence of the jury and before the court admitted the results of the blood test into evidence, Combs timely objected to the admission of the evidence. *Id.* at 160–61. Combs argued that the State failed to lay a proper foundation for the blood test results because Medical Technologist Smith is not a physician and the State presented no evidence that she collected Combs's blood using a protocol prepared by a physician. *Id.* He makes this argument again on appeal.

We agree with Combs that the State failed to present evidence that the person who collected his blood was a "physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician[.]" I.C. § 9–30–6–6(a). In fact, the State admitted when responding to Combs's objection: "I called Pam Smith to testify that she did, what they call a law draw, and that's really not pursuant to the protocol, it's pursuant to a Court Order and the standards were followed and there is a protocol of standards set forth in the Indiana Department of Toxicology Kit that says what you've got to do." Tr. p. 162. According to the State, because the police collection kit contained instructions for the "physician or technician" drawing the blood sample, *see* State's Ex. 7, that is sufficient evidence that the protocol was prepared in compliance with Indiana Code § 9–30–6–6, Tr. p. 162. On appeal, the State abandons this argument and contends instead that the circumstances surrounding the blood draw, specifically that "the sample was drawn by hospital personnel in the typical manner, ... create[] a strong inference that the blood was obtained according to the requirements of Indiana Code Section 9–30–6–6." Appellee's Br. p. 10.

In support of its position, the State points to *Shepherd v. State*, 690 N.E.2d

5. Medical Technologist Smith explained that "law draws" are blood draws that are requested by police officers. Tr. p. 74.

318 (Ind.Ct.App.1997), *trans. denied, disagreed with on other grounds.* Combs also points to *Shepherd* in support of his argument. In *Shepherd,* another panel of this Court examined whether the State laid a proper foundation for the admission of blood test results where a lab technician collected the defendant's blood sample. The lab technician testified that the protocol used was prepared by technical staff and then reviewed and approved by a physician. Further, the protocol contained the signature of a physician, who certified that "the above steps of the protocol are the accepted policy and procedures for 'Sample Collection for Legal Whole Blood (Ethanol) Levels' at Kosciusko Community Hospital." *Id.* at 328. The *Shepherd* panel looked at this evidence and concluded that there was sufficient evidence that the protocol was prepared by a physician as required by the statute. *Id.* at 328–29.

The case before us is distinguishable from *Shepherd.* Here, not only is the record devoid of evidence that a physician prepared the protocol followed by Medical Technologist Smith, there is absolutely no evidence that she acted under the direction of a physician when drawing Combs's blood sample or that a physician approved the protocol, as in *Shepherd.* While Medical Technologist Smith's testimony tells us about the process employed to collect blood samples, it tells us nothing about who developed the protocol or whether she acted under the direction of a physician.

To accept the State's position that the testimony regarding the circumstances surrounding the blood draw laid a proper foundation for the admission of the blood test results would be to ignore the clear language of Indiana Code § 9–30–6–6(a). Because the State failed to present evidence that Medical Technologist Smith drew Combs's blood "under the direction of or under a protocol prepared by a physician," I.C. § 9–30–6–6(a), the State failed to lay a proper foundation for admitting the blood test results, and the trial court abused its discretion in admitting this evidence.

## III. Harmless Error

■■ The State contends that any error committed by the trial court in admitting the results of Combs's blood test into evidence was harmless. Error is harmless if it does not affect the substantial rights of the defendant. *Littler v. State,* 871 N.E.2d 276, 278 (Ind.2007). "Harmlessness is ultimately a question of the likely impact of the evidence on the jury." *Id.* (citation omitted).

The State charged Combs with operating a vehicle while intoxicated under Indiana Code § 9–30–5–2(a), and he was convicted of this offense as a Class D felony pursuant to Indiana Code § 9–30–5–3(a)(1). In order to convict Combs under these statutes, the State had to prove that Combs "operat[ed] a vehicle while intoxicated" and "has a previous conviction of operating while intoxicated that occurred within the five (5) years immediately preceding the occurrence of the violation . . . ." I.C. § 9–30–5–2(a); I.C. § 9–30–5–3(a)(1). Combs makes no contention that he did not operate a vehicle or that he does not have a conviction for operating while intoxicated within the past five years. Instead, the only element of his offense at issue is whether he was intoxicated.

Excluding the results of Combs's blood test, the evidence is otherwise sufficient to prove this element. The evidence shows that Combs was intoxicated. Blood alcohol test results are not necessary to sup-

port a conviction of operating a vehicle while intoxicated pursuant to Indiana Code § 9–30–5–2. *Pickens v. State*, 751 N.E.2d 331, 335 (Ind.Ct.App.2001) (citing *Mehidal v. State*, 623 N.E.2d 428, 432 (Ind.Ct.App. 1993)). Because "there is no statutory requirement of proof of a particular blood-alcohol content above which a person is intoxicated" under Indiana Code § 9–30–5–2,[6] the State may prove intoxication "by a showing of impairment." *Monjar v. State*, 876 N.E.2d 792, 798 (Ind.Ct.App. 2007) (citing *Pickens*, 751 N.E.2d at 335), *trans. denied.* We have concluded that the following evidence can sufficiently establish impairment: "(1) the consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech." *Id.*

Here, Combs admitted to Sergeant Smith that he had consumed several beers. Tr. p. 46. Sergeant Smith detected the odor of alcohol on Combs's breath and saw two empty beer cans in his car. *Id.* Combs's speech was slurred and his eyes were bloodshot. *Id.* Further, Combs fumbled with his wallet when asked to show his license and registration. *Id.* at 44. Sergeant Smith conducted several field sobriety tests, which Combs failed. He failed the "walk and turn" test by failing to touch his heel to his toes, by not counting aloud, and by stepping off of the given line. *Id.* at 49–50. He next failed

the "finger to nose test" because he could not touch his finger to his nose. *Id.* at 50. Finally, he failed the "count backwards test" by missing and repeating numbers. *Id.* Thus, the erroneous admission of Combs's blood test results was harmless because the evidence otherwise amply supports the jury's finding that Combs operated his vehicle while intoxicated and the test results likely had no impact on the jury's verdict.

Affirmed.

KIRSCH, J. and CRONE, J., concur.

---

**6.** This is in contrast to cases in which a defendant is convicted pursuant to Indiana Code § 9–30–5–1(a) or (b), which require proof that a defendant operated a vehicle with a blood alcohol concentration of at least 0.08. Here, Combs was convicted of both operating while intoxicated and operating with a blood alcohol concentration of at least 0.08. The trial court found that both of these convictions

merged into the Class D felony conviction. Had the trial court entered judgment of conviction upon the conviction for operating with a blood alcohol concentration of at least 0.08, our result today would be different. However, it is clear from the record that the trial court used the operating while intoxicated conviction to support the Class D felony conviction.