STATE of Indiana, Appellant–Plaintiff,

v.

William HUNTER, Appellee–Defendant.

No. 49A02–0810–CR–884.

Court of Appeals of Indiana.

Dec. 30, 2008.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

As a reserved question of law, the State appeals the trial court's ruling to exclude evidence during a bench trial which resulted in the acquittal of William Hunter on the charge that he committed class A misdemeanor operating a vehicle while intoxicated.

We affirm.

### ISSUE

Whether the trial court erred when it excluded the report of blood test results because the State had failed to establish the requisite foundation as to the drawing of Hunter's blood.

### FACTS

At approximately 1:35 a.m. on March 1, 2008, Officer Richard Eldridge of the Indianapolis Metropolitan Police Department observed Hunter drive his vehicle from a shopping center parking lot, cross two lanes of eastbound traffic, and turn left to go westbound on West 10th Street. Because Hunter had failed to signal his turn, the officer initiated a traffic stop. During the traffic stop, the officer's observations of Hunter led him to believe that Hunter was intoxicated. He asked Hunter to exit his vehicle to perform field sobriety tests. Hunter exited the vehicle, but then advised that he was not willing to perform any field sobriety tests. The officer read Indiana's Implied Consent Law to Hunter. Hunter refused to consent to a chemical test. The officer repeated the reading, and Hunter again refused consent.

The officer arrested Hunter and transported him to the Arrestee Processing Center. The officer then prepared an affidavit of probable cause, seeking a warrant for a sample of Hunter's blood for chemical analysis. A warrant was issued.

The officer then took Hunter to Wishard Hospital Detention Unit and presented "the signed search warrant from a judge to pull the blood from Mr. Hunter" to Nurse Stephanie VanContron, who was "wearing hospital scrubs" and "a Wishard Hospital photo and identification." (Tr. 14, 15). VanContron drew two vials of Hunter's blood and gave them to the officer, who subsequently forwarded the vials for chemical testing.

That same day, March 1, 2008, the State charged Hunter with operating a vehicle while intoxicated, a class A misdemeanor; public intoxication, a class B misdemeanor; and failing to signal a turn, a traffic infraction. On April 23, 2008, Hunter filed a motion to suppress, arguing that "any and all evidence resulting from the warrantless stop, detention and arrest" should be excluded. (App.15).

On May 5, 2008, the trial court held a combined hearing on Hunter's motion and a bench trial. Officer Eldridge testified that at Wishard Hospital, Nurse VanCon-tron prepped Hunter's arm with a brownish orange substance, took a sterile needle from a sealed plastic bag, and drew two vials of Hunter's blood at 3:20 a.m. He further testified that the procedure was performed in the same fashion as the more than twenty blood draws he had previously witnessed. However, during cross-examination, the officer conceded that he was not familiar with "the medical protocol from a physician" for the drawing of blood by a nurse, or "the nurse's training in obtaining bodily substance samples." (Tr. 20).

At the conclusion of the officer's testimony, Hunter pressed his motion to suppress. He argued that because Indiana Code section 9-21-8-24, the statute specified on the traffic citation, did not expressly require that a driver signal when pulling from a parking lot, the officer's stop of Hunter was "unlawful." (Tr. 32). The trial court denied the motion to suppress.

Robert McCurdy, supervisor of the chemistry unit of the Marion County Forensic Services Agency, then testified to the procedures used in the unit to conduct the analysis of blood and report thereon. McCurdy testified that a chemist in the unit had performed an analysis of the blood drawn from Hunter and reported the "weight per volume" presence of ethyl alcohol therein. (Tr. 52). At this point, Hunter objected and preliminarily asked questions which established that McCurdy was not present "when the substances were drawn" from Hunter, and had no personal "knowledge of the protocols from the hospital" for drawing blood. (Tr. 52, 53). Hunter objected to the State's "improper foundation." (Tr. 53).

After hearing the State's responsive argument for the admissibility of the evidence, the trial court ruled that it would not admit the forensic report regarding the alcohol content of Hunter's blood. Specifically, the trial court "conclude[ ]d that the State ha[d] not laid an adequate foundation to satisfy th[ ]e requirements" of Indiana Code section 9-30-6-6: that "the blood was drawn by a physician or a person trained in obtaining bodily substance samples; and ... that the protocol used for collecting a defendant's blood sample was prepared by a physician...." (Tr. 55).

Subsequently, the trial court found Hunter not guilty of operating a vehicle while intoxicated and failing to signal. It found him guilty of public intoxication, a class B misdemeanor.

## DECISION

When the defendant has been acquitted and the State appeals a reserved question of law, only questions of law are considered by this court. *State v. Lloyd,* 800 N.E.2d 196, 198 (Ind.Ct.App.2003). Although the issue addressed is moot, the purpose of the appeal is to provide guidance to the trial court in future cases. *Id.* Further, in resolving the issue presented, we note that a trial court has broad discretion in ruling on the admissibility of evidence, and we will only disturb a trial court's ruling upon a showing of an abuse of discretion. *Id.* The decision to admit or exclude evidence will not be reversed ab-

sent a showing of manifest abuse of discretion resulting in the denial of a fair trial. *Id.* An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the appellant's favor. *Id.*

■ As noted above, the trial court found that the forensic report on the analysis of Hunter's blood was inadmissible because the State failed to establish the requisite foundation under Indiana Code section 9–30–6–6. The statute provides the following protocol pertaining to the collection/obtaining of bodily substance samples:

> A physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician, who:
>
> (1) obtains a blood, urine, or other bodily substance sample from a person, regardless of whether the sample is taken for diagnostic purposes or at the request of a law enforcement officer under this section; or
>
> (2) Performs a chemical test on blood, urine, or other bodily substance obtained from a person;
>
> shall deliver the sample or disclose the results of the test to a law enforcement officer who requests the sample or results as a part of a criminal investigation. Samples and test results shall be provided to a law enforcement officer even if the person has not consented to or otherwise authorized their release.

Ind.Code § 9–30–6–6(a).

In reaching its determination, the trial court relied on *Shepherd v. State,* 690 N.E.2d 318 (Ind.Ct.App.1997), *trans. denied, disagreed with on other grounds.*

There, Shepherd argued that the State had failed to establish that the protocol used for collecting his blood complied with the statute. We noted that the statutory language specified "samples collected by '[a] physician or person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician.' " *Id.* at 328 (quoting I.C. § 9–30–6–6(a)). We further noted that the technician who collected Shepherd's blood sample testified "that the protocol used was prepared by the technical staff and then subsequently reviewed and approved by a physician." *Id.* at 328. Moreover, "the protocol contained the signature of Thomas A. Kocoshis, M.D., certifying that 'the above steps [of the protocol] are the accepted policy and procedures for 'Sample Collection for Legal Whole Blood (Ethanol) Levels' at Kosciusko Community Hospital.' " *Id.* We found such evidence sufficient to establish that "the protocol was prepared by a physician as required by the statute." *Id.* at 328–39. Here, unlike in *Shepherd,* there is absolutely no evidence that Nurse VanContron was acting under a protocol prepared by a physician.

More recently, in *Combs v. State,* 895 N.E.2d 1252, 1255 (Ind.Ct.App.2008), the appellant argued that "the State failed to lay a proper foundation for admitting" blood test results "because it did not present evidence that the person who drew Combs's blood acted under proper protocol." We stated that inasmuch as our Supreme Court had noted that "the foundation for admission of laboratory blood drawing and testing results, by statute, involves technical adherence to a physician's directions or to a protocol prepared by a physician," the foundational requirement of Indiana Code section 9–30–6–6 could "not be ignored." *Id.* (quoting *Hopkins v. State,* 579 N.E.2d 1297, 1303 (Ind. 1991)). In *Combs,* the medical technician

who drew the blood testified "about her educational background and professional experience drawing blood samples," and further testified regarding the procedure she utilized in drawing Combs's blood. However, we found "that the State failed to present evidence that [this technician] was a 'physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician[.]' " *Id.* at 1257 (quoting I.C. § 9–30–6–6(a)). Specifically, we found the "record devoid of evidence that a physician prepared the protocol followed by" the technician, and "absolutely no evidence that she acted under the direction of a physician" when drawing Combs's blood. *Id.* at 1258. Accordingly, we held that "the State failed to lay a proper foundation for admitting the blood test results." *Id.*

Here, as in *Combs,* the State has failed to present evidence that Nurse VanContron was "acting under the direction of or under a protocol prepared by a physician[.]" I.C. § 9–30–6–6(a). Moreover, unlike in *Combs,* the State failed to present any evidence that Nurse VanContron was "a person trained in obtaining bodily samples." *Id.* Therefore, the inadequacy of the foundation is even more pronounced.

Nevertheless, the State argues that the statute "is inapplicable" here because Nurse VanContron drew Hunter's blood pursuant to a court-authorized warrant. State's Br. at 6. However, it cites no authority for this proposition, and we find none. Further, we do not find that because a search warrant directed hospital personnel to obtain a bodily substance sample, such should not trump and/or negate the legislature's statutory requirements outlining the prescribed protocol for obtaining such samples. The State further argues that the statute is inapplicable because it merely concerns "the proper tak-

ing of the bodily substance sample, *i.e.,* how, when and by whom," which "should have no affect [sic] on the admissibility of the test results in a criminal proceeding" against the person whose bodily substance was taken. *Id.* at 7, 8. Again, we find no merit in such a contention. Indiana statute and common law require a specific evidentiary foundation for the admission of bodily substance sample test results. Here, the State failed to establish that foundation.

Affirmed.

RILEY, J., and VAIDIK, J., concur.