Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**JESSE R. POAG**
Newburgh, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Dec 10 2013, 9:40 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY D. DRISCOLL, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.82A05-1303-CR-147 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable David D. Kiely, Judge
Cause No. 82C01-1103-FA-373

**December 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Timothy D. Driscoll, Jr. ("Driscoll") was convicted of dealing in methamphetamine[1] as a Class B felony and was sentenced to eight years executed. He appeals his conviction raising the following restated issues:

I.      Whether the trial court abused its discretion when it admitted testimony and photographs of evidence that had been destroyed by law enforcement prior to the trial; and

II.     Whether sufficient evidence was presented to support Driscoll's conviction.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of March 22, 2011, Deputy Brian Bishop ("Deputy Bishop") of the Vanderburgh County Sheriff's Office, while working for his part-time security business LawMan Security Consulting, was patrolling the premises of Hoesli Diesel, which was a business that provided services for diesel engines. Around 2:00 a.m., as Deputy Bishop drove around the side of the building, he noticed a pick-up truck backed up to one of the loading bays. Because he regularly patrolled the business, Deputy Bishop knew it was uncommon for a truck to be backed up to a bay door at that time in the morning. When he began driving toward the bay door, a man, later identified as Driscoll, who was an employee at Hoesli Diesel and was driving a company vehicle, approached him. Driscoll appeared extremely nervous, and Deputy Bishop asked him if anyone was inside the building. Driscoll replied, "yes, . . . a guy named Jeff." *Tr.* at 33.

---

[1] *See* Ind. Code § 35-48-4-1.1(a).

Deputy Bishop called for backup, and another deputy arrived. Deputy Bishop then went inside Hoesli Diesel. Once inside, Deputy Bishop discovered a man, who was later identified as Jeffrey Peaugh ("Peaugh"). Peaugh was in one of the offices "with his feet propped up on one of the desks, . . . pornographic material on the computer, and what appeared to . . . be a pipe usually used to smoke narcotics." *Id*. at 34. Deputy Bishop ordered Peaugh out of the office, placed him in custody, and searched him. During the search, Deputy Bishop felt a "soft bag of material" that he believed was narcotics based on his training and experience. *Id*. at 35. The bag was later determined to contain ten grams of methamphetamine. Both Driscoll and Peaugh were put under arrest.

Deputy Bishop then contacted Dan Hoesli ("Hoesli"), the owner of Hoesli Diesel, and requested that he come to the building. When Hoesli arrived, Deputy Bishop asked that he walk through the premises and tell the deputy if anything was out of place. As Hoesli walked through the building, he noticed that the exhaust system, which was used to eliminate odors, had been turned on, which was unusual because the business's operations had ceased for the night. Hoesli showed Deputy Bishop that the exhaust system had been turned on, and they began checking the exhaust tubes in each truck bay to determine which one was on. As they came to the last bay, Hoesli showed Deputy Bishop that there was a large pickle jar sitting on the steps on the side of a semi. Based on his training and experience, Deputy Bishop knew the jar was actually a one-pot methamphetamine reaction vessel. Two more glass jars were discovered on the ground of the bay, one with a heat lamp pointing towards it. All of these glass jars were located next to Driscoll's work space.

Deputy Bishop vacated the premises, called the fire department, and notified the narcotics unit. Another deputy transported Peaugh to the jail, and when Peaugh was searched during booking, several thousands of dollars in cash was found in his pocket. When Driscoll was booked into jail, a large amount of cash was also discovered on his person.

Detective Heath Stewart ("Detective Stewart"), a member of the Joint Drug Task Force, responded to Deputy Bishop's call. When he arrived at the premises, his primary function was to photograph the scene. In addition to the reaction vessel, Detective Stewart found funnels, a one-gallon container of Coleman fuel and other organic solvents, and a black box in Driscoll's work station that contained manufacturing paraphernalia. Detective Stewart also found a one-gallon tank garden sprayer, tubing, Kosher salt, two containers of Liquid Fire sulfuric acid, coffee filters, a high watt light, two glass jars containing liquid, an air purifying respirator ("APR") mask, plastic sandwich bags, tools commonly used to strip lithium batteries, and an HCL generator, all of which he recognized as items commonly used in the manufacturing of methamphetamine. As Detective Stewart photographed the scene, a state trooper with the methamphetamine unit neutralized the reaction vessel due to its instability. Detective Stewart photographed the reaction vessel prior to its neutralization. The reaction vessel posed a significant safety risk because it could easily explode if the lithium inside the jar was exposed to air, particularly because it was located in a diesel engine mechanic shop. Video surveillance footage of the premises showed Peaugh and Driscoll enter and exit the shop area multiple times and approach Driscoll's work station while the methamphetamine was being manufactured.

4

The State charged Driscoll with two counts of dealing in methamphetamine, each as a Class A felony. A jury trial was held, at the conclusion of which, Driscoll was found guilty of one count of Class B felony dealing in methamphetamine, a lesser included offense of his charged offense, and not guilty of the other count of Class A felony dealing in methamphetamine. He was sentenced to eight years executed in the Department of Correction. Driscoll now appeals.

## DISCUSSION AND DECISION

### I. Admission of Evidence

The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Bradford v. State*, 960 N.E.2d 871, 873 (Ind. Ct. App. 2012) (citing *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002)). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* (citing *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001)). Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission of evidence constituted harmless error. *Combs v. State*, 895 N.E.2d 1252, 1255 (Ind. Ct. App. 2008), *trans. denied*. Error is harmless if it does not affect the substantial rights of the defendant. *Id.* at 1258.

Driscoll argues that the trial court abused its discretion when it allowed testimony and photographs concerning the reaction vessel to be admitted at his trial. He contends that such evidence should not have been admitted because the State did not properly preserve a sample of the chemicals contained within the jar pursuant to Indiana Code

5

section 35-33-5-5(e). Driscoll further asserts, that the admission of this evidence was not harmless error because much of the testimony at trial centered around the reaction vessel.

Criminal defendants have the right to examine physical evidence in the possession of the State under the Fourteenth Amendment to the United States Constitution and Article I, Section 12 of the Indiana Constitution. *Jones v. State*, 957 N.E.2d 1033, 1037 (Ind. Ct. App. 2011). "However, the State does not have 'an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution.'" *Terry v. State*, 857 N.E.2d 396, 406 (Ind. Ct. App. 2006) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)), *trans. denied*. In the context of hazardous chemicals and materials, tension arises between the practical need for destruction and the threat of prejudice to the substantial rights of a criminal defendant, which necessarily occurs when evidence is destroyed. *Jones*, 957 N.E.2d at 1037. Indiana Code section 35-33-5-5 sets forth requirements that must be satisfied before evidence may be destroyed and states in pertinent part:

> A law enforcement agency may destroy or cause to be destroyed chemicals, controlled substances, or chemically contaminated equipment (including drug paraphernalia as described in IC 35-48-4-8.5) associated with the illegal manufacture of drugs or controlled substances without a court order if all the following conditions are met:
>
> (1)   The law enforcement agency collects and preserves a sufficient quantity of the chemicals, controlled substances, or chemically contaminated equipment to demonstrate that the chemicals, controlled substances, or chemically contaminated equipment was associated with the illegal manufacture of drugs or controlled substances.
> (2)   The law enforcement agency takes photographs of the illegal drug manufacturing site that accurately depict the presence and quantity of chemicals, controlled substances, and chemically contaminated equipment.

(3)     The law enforcement agency completes a chemical inventory report that describes the type and quantities of chemicals, controlled substances, and chemically contaminated equipment present at the illegal manufacturing site.

The photographs and description of the property shall be admissible into evidence in place of the actual physical evidence.

Ind. Code § 35-33-5-5(e).

In the present case, the contents of the reaction vessel, discovered near the semi in Driscoll's work station, were destroyed due to their instability and the risk of explosion. A sample of the contents of the reaction vessel was not taken because doing so would have created a dangerous situation. *Tr.* at 154. The reaction vessel posed a significant safety risk because it could easily explode if the lithium inside the jar was exposed to air, particularly because it was located in a diesel engine mechanic shop. Photographs were taken of the scene that depicted the presence and quantity of all of the chemicals found and of the reaction vessel, including its location at the scene. The police also cataloged the various substances and the amounts thereof discovered at the scene.

Assuming without deciding that the trial court abused its discretion in admitting the evidence at issue because the State failed to follow Indiana Code section 35-33-5-5(e), we conclude that the error was harmless. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission of evidence constituted harmless error. *Combs*, 895 N.E.2d at 1255. Error is harmless if it does not affect the substantial rights of the defendant. *Id.* at 1258. The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence

7

contributed to the conviction. *Ware v. State*, 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004) (citing *Hernandez v. State,* 785 N.E.2d 294, 300 (Ind. Ct. App. 2003), *trans. denied).*

Here, the State presented substantial independent evidence of Driscoll's guilt. The record shows that a significant amount of items associated with the manufacture of methamphetamine were discovered in Driscoll's work station, including a large black box containing manufacturing paraphernalia, funnels, a one-gallon container of Coleman fuel and other organic solvents, a one-gallon tank garden sprayer, tubing, Kosher salt, two containers of Liquid Fire sulfuric acid, coffee filters, a high wattage light, two glass jars containing liquid, an APR mask, plastic baggies, tools commonly used to strip lithium batteries, and an HCL generator. Detective Stewart testified that, through his training and experience, he recognized these things as items commonly seen in a manufacturing lab for methamphetamine. *Tr.* at 139. Detective Stewart also described the process of manufacturing methamphetamine and how each of the items discovered was important to the manufacturing process. *Id.* at 131-33, 139-41, 144-45,152-59. Further, the surveillance video recovered from Hoesli Diesel showed Driscoll entering and exiting the garage many times, approaching Peaugh, and standing near the area where the methamphetamine was being manufactured. This evidence was sufficient to support Driscoll's conviction. We therefore conclude that any error in the admission of evidence concerning the reaction vessel was harmless as it did not affect Driscoll's substantial rights.

## II.  Sufficient Evidence

Our standard of review for sufficiency claims is well-settled. When we review a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility

of the witnesses. *Parahams v. State*, 908 N.E.2d 689, 691 (Ind. Ct. App. 2009) (citing *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003)). We look only to the probative evidence supporting the judgment and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.* It is the function of the trier of fact to resolve conflicts of testimony and to determine the weight of the evidence and the credibility of the witnesses. *Yowler v. State*, 894 N.E.2d 1000, 1002 (Ind. Ct. App. 2008).

Driscoll argues that insufficient evidence was presented to support his conviction for dealing in methamphetamine as a Class B felony. He specifically contends that the State failed to prove the "methamphetamine" element of the crime because no methamphetamine was found except for on Peaugh's person and that the lab had not been "smoked off" so it could not have produced methamphetamine at the time of its discovery. Driscoll therefore asserts that, because the final product of methamphetamine was not found, insufficient evidence was presented to find him guilty.

In order to convict Driscoll of dealing in methamphetamine as a Class B felony, the State was required to prove that he knowingly or intentionally manufactured methamphetamine, pure or adulterated. Ind. Code § 35-48-4-1.1(a). The term "manufacture" is defined as:

> the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or

9

labeling or relabeling of its container.

Ind. Code § 35-48-1-18.

The evidence presented showed that many different items commonly used in the manufacture of methamphetamine were discovered in Driscoll's work space at Hoesli Diesel, including many of the chemicals used in the process and several bottles of liquid. Detective Stewart described how each of the items was used in the process of manufacturing methamphetamine and that the methamphetamine lab found in Driscoll's work station was in the process of manufacturing and not a completed lab. The surveillance video also showed Driscoll present in the area of the lab while the methamphetamine was being manufactured. The statute does not state that the process must be completed or that there must actually be a final product before it applies. *Bush v. State*, 772 N.E.2d 1020, 1023 (Ind. Ct. App. 2002), *trans. denied*. This court has previously upheld convictions for dealing in methamphetamine where no finished product was found. *See Robertson v. State*, 877 N.E.2d 507, 516 (Ind. Ct. App. 2007) (affirming defendant's dealing in methamphetamine conviction where several items involved in the manufacture of methamphetamine were found but no finished product); *Bush v. State*, 772 N.E.2d at 1023 (upholding conviction for dealing in methamphetamine when no finished product was found, but there was evidence that defendant was producing, preparing, and processing methamphetamine). We therefore conclude that sufficient evidence was presented to support Driscoll's conviction for dealing in methamphetamine as a Class B felony.

Affirmed.

ROBB, C.J., and RILEY, J., concur.

10