**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Mar 18 2014, 10:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Office of the Public Defender
Appellate Division
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

EDGARDO JOSE GUIDO,                )
                                   )
    Appellant-Defendant,           )
                                   )
       vs.                     )    No. 45A03-1307-CR-286
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.            )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
The Honorable Kathleen A. Sullivan, Magistrate
Cause No. 45G01-1207-FB-68

**March 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Edgardo Jose Guido appeals from his conviction and sentence for one count of incest[1] as a Class B felony, contending that the trial court erred in excluding testimony and that his sentence is inappropriate.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In May 2012, after participating in a track meet as part of her school activities, N.G., who was fourteen years old at the time, arrived home at approximately 8:00 p.m. or 9:00 p.m. and went to her room. Her back was sore from running in the track meet, so she stretched out on her stomach on her bed. Guido, N.G.'s father, was home at the time and went into N.G.'s bedroom. N.G. told her father that her back was sore. Guido then crawled over N.G. and lay down next to her to massage her back. Guido first massaged N.G.'s back and continued down her legs. Guido then told N.G. to roll over on her back, and N.G. complied. Guido then placed his hand inside N.G.'s pants and underwear and began touching her vagina. Guido continued rubbing the outside of N.G.'s vagina for what seemed to her to be approximately ten minutes. After he was finished, Guido told N.G., "Don't tell anyone," and left N.G.'s room. *Tr.* at 90. Initially, N.G. did not tell anyone else about this incident.

Later that same year, in May, June, or July, N.G. was standing in the hallway of her home when Guido walked in. Guido grabbed N.G's wrist and pulled her hand toward his penis. N.G. pulled away, and although she did not touch Guido, Guido again instructed

---

[1] *See* Ind. Code § 35-46-1-3.

her not to tell anyone about the incident. N.G. could not remember the dates of each incident, but estimated that Guido touched her or tried to force her to touch him about ten times.

N.G. did recall other incidents that occurred during the same summer. On one occasion, at around midnight, N.G. went into her parents' bedroom to get some lip balm from her mother's nightstand while Guido was still in bed. N.G.'s mother was home, but was downstairs. Guido told N.G. to get into bed with him. Guido placed his fingers inside N.G.'s vagina. N.G. did not scream, but left the room when Guido stopped.

In either June or July 2012, N.G. returned home in the afternoon, and Guido was the only family member home at the time. N.G. came inside the house and sat down on the couch. Guido told N.G. to stand up and pull down her pants and then told her to sit down. He placed his fingers inside her vagina.

On July 16, 2012, Guido entered N.G.'s room just after he awoke at 5:00 a.m. N.G. was feigning sleep because she knew Guido would enter her room. Guido then crawled over N.G. and got into her bed. Guido inserted his fingers inside of N.G.'s vagina until he had to leave for work. N.G. did not scream out, but started to cry. When N.G.'s mother came into N.G.'s bedroom sometime later, N.G. told her mother about the incidents involving Guido.

N.G. had decided to tell her mother about the incidents because she was afraid that Guido would become more physical with her or "go further," and she feared that the same thing might be happening to her sisters. *Id*. at 204. N.G.'s mother took N.G. to N.G.'s

grandmother's house, and they told her grandmother what had happened. They then called the police to report the incidents.

Guido was arrested and charged with incest and attempted sexual misconduct with a minor. After a jury trial, Guido was found guilty of incest, but was acquitted of the charge alleging attempted sexual misconduct with a minor. The trial court sentenced Guido to a term of twelve years in the Indiana Department of Correction with two years suspended. Guido now appeals. Additional facts will be supplied as needed.

## DISCUSSION AND DECISION

Guido claims that the trial court abused its discretion by excluding the testimony of N.G.'s mother regarding what a Department of Child Services ("DCS") caseworker said to her following N.G.'s interview. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Bradford v. State*, 960 N .E.2d 871, 873 (Ind. Ct. App. 2012) (citing *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002)). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id*. (citing *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001)). Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission of evidence constituted harmless error. *Combs v. State*, 895 N.E.2d 1252, 1255 (Ind. Ct. App. 2008), *trans. denied*. Error is harmless if it does not affect the substantial rights of the defendant. *Id*. at 1258.

Additionally, Indiana Evidence Rule 402 establishes that relevant evidence is generally admissible, while irrelevant evidence is not admissible. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of

4

consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. "In order to be relevant, the evidence at issue 'need only have some tendency, however slight, to make the existence of a material fact more or less probable, or tend to shed any light upon the guilt or innocence of the accused.'" *Smith v. State*, 982 N.E.2d 393, 402 (Ind. Ct. App. 2013) (quoting *Simmons v. State*, 717 N.E.2d 635, 638 (Ind. Ct. App. 1999)).

At trial, Guido's counsel questioned N.G. and her mother about the number of adults with whom N.G. had spoken following the most recent incident and asked about the opportunities N.G. had for conversations about the allegations against Guido. During cross-examination of N.G.'s mother, Guido's counsel raised concerns about the fact that, when N.G.'s mother was attempting to gather more specific information about the incidents, she provided examples of conduct to N.G. in order to know exactly what had occurred. N.G.'s mother testified on cross-examination that she and N.G. had opportunities to speak about the incidents during the long commute to and from the police station and interview appointments. En route to an interview with a DCS caseworker, N.G.'s mother explained the interview to N.G. and told her to be honest, encouraging her to do the best she could during the interview. At the conclusion of the interview, the DCS caseworker came out and spoke with N.G.'s mother about the interview.

The State objected to further questioning about that conversation on the ground that it was irrelevant. Guido's counsel argued that the DCS caseworker told N.G.'s mother that N.G. "did a good job," in an effort to establish that N.G. had been encouraged to make the

allegations. *Tr.* at 255. The trial court sustained the State's objection, and the evidence was excluded.

The trial court correctly ruled that the evidence at issue was irrelevant because it did not make it any more probable that N.G. was prompted by adults to falsify her story. The statement was made to N.G.'s mother after N.G. was interviewed alone. Guido has failed to establish that the admission of this statement would make it more probable that N.G. was being encouraged or directed with respect to her allegations.

Lake County Sheriff's Department Detective Lawrence Thurmond testified that someone from DCS was the only person allowed to be present during his interview of N.G. Detective Thurmond testified that the method used during his interview was a forensic interview procedure designed for children that involved asking the child to tell their story on their own. The record is silent on the subject of whether the person from DCS would have conducted any part of the interview. Further, there is no evidence in the record establishing that a DCS caseworker conducted that interview or directed or encouraged N.G. during that interview with Detective Thurmond.

We disagree with Guido's contention that the statement is relevant to show that N.G. was receiving positive reinforcement through the repetition of her story, which makes the existence of the abuse less likely. There is no evidence to suggest that the statement was directed at N.G. or made the abuse less likely to have occurred. Guido did not argue that N.G. was present when the comment was made or that she overheard the comment.

Assuming, *arguendo,* that the trial court's decision to exclude the statement was erroneous, such error would be harmless. Guido was provided the opportunity to

6

thoroughly advance his theory that N.G. had spoken with numerous adults who may have given her direction during those conversations. Guido was allowed to establish that N.G. had discussed the allegations with at least ten adults. During questioning of N.G.'s mother, Guido's counsel was able to present evidence that N.G.'s mother offered examples of conduct from which N.G. chose in describing what Guido had done to her. N.G. had spoken with her mother and her grandmother during the numerous, extended trips in the car, during which her mother explained what was happening and told her to be honest and to do her best. Assuming that the trial court abused its discretion, which it did not, such error was harmless.

Guido also challenges the trial court's sentencing order contending that his sentence is inappropriate in light of the nature of the offense and the character of the offender. Appellate courts may revise a sentence after careful review of the trial court's decision if they conclude that the sentence is inappropriate based on the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Even if the trial court followed the appropriate procedure in arriving at its sentence, the appellate court still maintains a constitutional power to revise a sentence it finds inappropriate. *Hope v. State*, 834 N.E.2d 713, 718 (Ind. Ct. App. 2005). The defendant has the burden of persuading the appellate court that his sentence is inappropriate. *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008).

Guido was convicted of one count of incest as a class B felony. A person who commits a Class B felony shall be imprisoned for a fixed term of between six and twenty years with the advisory sentence being ten years. Ind. Code § 35-50-2-5. The trial court

7

sentenced Guido to a term of twelve years in the Indiana Department of Correction with two years suspended. While it is true that Guido had no criminal history, and the position-of-trust aggravating circumstance is of little consequence, since it is typically the case in prosecutions for incest, the repeated incidents of the crime justify Guido's mid-range sentence. At sentencing, Guido gave a statement to the trial court in which he denied the allegations and challenged the facts presented at trial, calling N.G.'s version of the events "impossible," thus exhibiting his lack of remorse or acceptance of responsibility. *Tr.* at 393. The trial court acknowledged Guido's lack of criminal history by suspending two years of Guido's sentence. Guido has failed to meet his burden of persuading us that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.