## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 08 2020, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Alexander N. Moseley
Ciyou and Dixon, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John E. Martin,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | September 8, 2020<br><br>Court of Appeals Case No.<br>20A-CR-228<br><br>Appeal from the Tippecanoe<br>Circuit Court<br><br>The Honorable Sean M. Persin,<br>Judge<br>The Honorable Daniel J. Moore,<br>Magistrate<br><br>Trial Court Cause No.<br>79C01-1702-F5-20 |

**Baker, Senior Judge.**

John Martin appeals his conviction for Level 5 Felony Operating While Intoxicated,[1] arguing that blood draw evidence lacked a proper foundation and was improperly admitted at trial. Finding no error, we affirm.

## Facts

On February 10, 2017, John Martin's car slid off the highway and into a ditch. A deputy with the Mulberry Police Department learned of the accident from someone at a nearby gas station. When he arrived at the scene, the car was sitting next to the road, and Martin was walking away from the accident. Martin told the deputy that he had been in an accident, but he was not hurt. The deputy called for backup.

Lieutenant Randy Martin with the Tippecanoe County Sheriff's Department responded. He confirmed that no one else was in or near the car, which was still hot. Lieutenant Martin smelled marijuana at the scene, smelled alcohol on Martin, noticed that Martin's speech was "very thick, slow, and slurred," and that Martin was having trouble balancing. Tr. Vol. II p. 81-82. The lieutenant conducted a horizontal gaze nystagmus test; Martin failed. *Id.* at 85, 118-119. Lieutenant Martin also administered a portable breath test to Martin, which tested positive for alcohol. *Id.* at 119.

---

[1] Ind. Code §§ 9-30-5-2, -3(b)(1)

[4] Deputy Dustin Oliver also responded. He smelled alcohol on Martin. *Id.* at 165. He took Martin to the sheriff's department hoping to administer more sobriety tests, which Martin ultimately refused. Deputy Oliver obtained a search warrant for Martin's blood and took him to a hospital for a blood draw.

[5] At the hospital, Deputy Oliver noticed that Martin's eyes were glassy, his balance was unsteady, and he was slurring his words. Tr. Vol. II p.173-174. Maria Linenmeyer, a registered nurse, drew Martin's blood. She gave Deputy Oliver two of the samples she collected to send to the Indiana Department of Toxicology and sent a third sample to the hospital's lab. The state lab reported that Martin's blood contained 0.256 grams of alcohol per 100 milliliters. The hospital lab reported that Martin's blood contained 0.242 grams of alcohol per 100 milliliters.

[6] The State charged Martin with Level 5 felony operating a vehicle while intoxicated, Level 6 operating a vehicle while intoxicated, Class A misdemeanor operating a vehicle with an alcohol concentration of 0.15 or more, and Level 5 felony operating a vehicle with an ACE of 0.15 or more, and alleged that he was an habitual vehicular substance offender. Appellant's App. Vol. II pp. 27-31.

[7] The trial was bifurcated. The first phase was a jury trial on the underlying charges.[2] Nurse Linenmeyer testified that she had received specific training on legal blood draws. Tr. Vol. II pp. 213-14. She said that the hospital had a policy in place for these draws and that the policy was approved by a doctor. *Id.* at 214. She said that she followed those policies in drawing Martin's blood. *Id.* at 214, 217-19. She described what that policy entails. *Id.* at 214-24. After her testimony, the blood draw evidence was admitted over Martin's objection. *Id.* at 240, Tr. Vol. III p. 39-40. The jury found Martin guilty of Class C Misdemeanor Operating a Vehicle While Intoxicated and Class A Misdemeanor Operating a Vehicle with ACE of 0.15 or More.

[8] The second phase was a bench trial on Martin's criminal history; at the conclusion of that phase, the trial court found Martin guilty as charged. Due to double jeopardy concerns, however, the court entered judgment of conviction only on Level 5 Felony operating a vehicle while intoxicated. Tr. Vol. IV p. 173. The enhancement to a Level 5 felony was based on Martin's past conviction for operating a vehicle while intoxicated upon causing death. *Id.*; App. Vol. II p. 23-24. The trial court also found that Martin was an habitual vehicular substance offender. The court sentenced Martin to an aggregate term of six years in the Indiana Department of Correction, two years

---

[2] The underlying charge of operating while intoxicated is a Class C misdemeanor. Ind. Code § 9-30-5-2. That misdemeanor becomes a Level 5 or Level 6 felony if the defendant has certain previous convictions. Ind. Code § 9-30-5-3. Here, the first phase of the trial focused solely on whether Martin operated while intoxicated—the Class C misdemeanor—while the second phase focused on his criminal history and determined whether the Class C misdemeanor would be enhanced to a felony.

in Tippecanoe County Community Corrections, and one year of probation. App. Vol. II p. 24. Martin now appeals.

## Discussion and Decision

[9] Martin argues that the trial court erred in admitting the blood draw evidence against him. In reviewing a trial court's admissibility determination, we will reverse only if it goes against the logic and effect of the facts, and the error affects the defendant's substantial rights. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). In conducting our review, we consider conflicting evidence in the light most favorable to the trial court's ruling, and do not reweigh evidence or re-evaluate witness credibility. *Johnson v. State,* 992 N.E.2d 955, 957 (Ind. Ct. App. 2013).

[10] Martin argues that the evidence was admitted in error because it lacked proper foundation as required by Indiana Code Section 9-30-6-6(a). This statute requires that blood samples be collected by:

> A physician, a person trained in retrieving contraband or obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician, or a licensed health care professional acting within the professional's scope of practice and under the direction of or under a protocol prepared by a physician.

*Id.* "The foundation for admission of laboratory blood drawing and testing results, by statute, involves technical adherence to a physician's directions or to a protocol prepared by a physician." *Hopkins v. State*, 579 N.E.2d 1297, 1303

(Ind. 1991). "This is not a requirement that may be ignored." *Combs v. State*, 895 N.E.2d 1252, 1256 (Ind. Ct. App. 2008).

[11] Martin argues that because the State relied solely on Nurse Linenmeyer's testimony, the State failed to show that Linenmeyer conducted Martin's blood draw pursuant to "a protocol prepared by a physician." Ind. Code § 9-30-6-6(a). To support this argument, he relies heavily on *Combs v. State*, in which this Court found that blood draw evidence supported only by a technician's testimony was improperly admitted because "the State failed to present evidence that [the blood draw occurred] 'under the direction of or under a protocol prepared by a physician.'" 895 N.E.2d at 1258 (quoting Ind. Code § 9-30-6-6(a)). In that case, there was "absolutely no evidence that [the technician] acted under the direction of a physician . . . or that a physician approved the protocol." *Id.*

[12] Martin's reliance on *Combs* is misplaced. The record in *Combs* was "devoid" of any evidence that the technician followed a physician-approved protocol or was herself a physician. *Id.* That is not so in this case. Nurse Linenmeyer testified that she was trained in legal blood draws, that her hospital had a protocol for legal blood draws, that a physician approved that protocol, and that she followed that protocol. Tr. Vol. II p. 213-14, 217-24. This showing was sufficient for the trial court to find that the State laid the proper foundation for the blood draw evidence.

[13]     In fact, the case before us is more in line with *Pedigo v. State*, 146 N.E. 3d 1002 (Ind. Ct. App. 2020), than *Combs*. In *Pedigo*, this Court distinguished *Combs* and upheld the admission of blood draw evidence because the blood draw technician's testimony included attestations that she followed a protocol approved by a physician. *Id.* at 1013-14. Martin argues that *Combs* applies because Linenmeyer's testimony is insufficiently detailed and reliable to support the court's decision. This argument is an invitation to reweigh the evidence, which this Court cannot and will not do. The trial court did not err by finding that Nurse Linenmeyer's testimony laid a sufficient foundation for the admission of the blood draw evidence.

[14]     Finally, we note briefly that even if the blood draw evidence was admitted in error, the error was harmless. "The improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011).

[15]     In the present case, there is substantial evidence of guilt independent of the blood draw. The relevant conviction here is the jury verdict finding Martin guilty of Class C misdemeanor operating a vehicle while intoxicated. This was the charge for which the blood draw evidence was considered.

[16]     As for whether Martin was driving, the record reveals that the car that slid off the highway is his, Lieutenant Martin testified that Martin told him he had been

driving when the accident occurred, and there was no one else at the scene who could have been driving. Tr. Vol. II p. 65, 80-81. As for whether Martin was intoxicated, the record reveals that Lieutenant Martin testified that Martin's speech was "thick, slow, slurred" and that "he was having a hard time with his balance." Tr. Vol. II p. 81-82. Deputy Oliver corroborated this testimony and added that Martin had glassy eyes. *Id.* at 173-74. Lieutenant Martin also testified that Martin's car smelled like "burnt marijuana" and Martin smelled faintly of alcohol. *Id.* Additionally, Martin failed a field sobriety test, and a portable breath test at the scene showed that there was alcohol in his system. *Id.* at 118-19.

[17] The evidence in the record independent of the blood draw is more than sufficient to support Martin's conviction. Therefore, even if the trial court had erred in admitting the blood draw evidence, the error was harmless.

[18] The judgment of the trial court is affirmed.

Bailey, J., and Vaidik, J., concur.